Mr. Justice FIELD
 

 delivered the opinion of the court.
 

 A large amount of evidence was taken in this case bearing upon the averments in the answer of misrepresentation and fraud on the part of the complainant; and it is, in many respects conflicting. But the rules of law applicable to cases of alleged misrepresentation by a vendor with respect to property sold are well settled, and render of easy solution the questions upon which this case must turn.
 

 The misrepresentation which will vitiate a contract of sale, and prevent a court of equity from aiding its enforcement, must not only relate to a material matter constituting an inducement to the contract, but it must relate to a matter respecting which the complaining party did not possess at hand the means of knowledge; and it. must be a misrepresentation upon which he relied, and by which he was actually misled to his injury. A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has beeu deceived by the vendor’s misrepre-, sentations. If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by overconfidence in the statements of another. And the same rule obtains when the complaining party does not rely upon the misrepresentations, but seeks from other quarters means of verification of the statements made, and acts upon the information thus obtained.
 

 The facts disclosed by the uncontradicted testimony of both parties bring this ease clearly within the principle here stated. Previous to the execution of the contract of purchase, and with the view of examining the steamboat-, the
 
 *384
 
 defendant went from Baltimore to New York, taking with him his son, who subsequently became captain of the boat, and two shipcarpenters, and a square to measure her draught of water. Whilst there every opportunity was given him to examine the boat with his carpenters, and a most thorough and careful examination was made by them. On two occasions they measured the draught of the boat, and they witnessed her speed by accompanying her on one of her trips. The owner went with them to the boat on their arrival in New York, and told them to look for themselves, and to go anywhere they pleased about her. If, under these circumstances, the defendant did not learn everything about her, and ascertain her true draught, it was his own fault, and it would be against the plainest principles of justice to allow him to set up, in impeachment of the validity of his contract, loose statements respecting the draught before its execution, even though they were false in point of tact.
 

 In
 
 Attwood
 
 v.
 
 Small,
 

 *
 

 a case which received great consideration in the House of Lords, the deféndant had sold to the complainants, constituting a company of numerous persons, certain freehold and leasehold property, including mines and ironworks, and had made certain statements respecting the capabilities of the property. The purchasers, not relying upon these statements, deputed some of their directors, together with experienced agents, to ascertain the correctness of his statements. These persons examined the property and works and the accounts kept by the defendant, receiving from him and his agents every facility and aid for that purpose, and they reported that the defendant’s statements were correct. Upon a bill filed to rescind the contract, on the ground of fraud, the House of Lords decided that the contract could not be rescinded, reversing, in that respect, the decree of the Court of Exchequer, not merely because there was no proof of fraud, but because'the purchasers did not rely upon the vendor’s statements, but tested their accuracy ; and, after having knowledge, or the means of knowl
 
 *385
 
 edge, declared that they were satisfied of their correctness, holding that if a purchaser, choosing to judge for himself, did not avail himself of the knowledge, or means of knowledge, open to him or to his agents, he could not he heard to say he was deceived by the vendor’s representations, the doctrine of
 
 caveat emptor
 
 applying in such case, and the knowledge of his own agents being as binding as his own knowledge.
 

 The doctrine, substantially as we have stated it, is laid down in numerous adjudications. Where the means of information are at hand and equally open to both parties, and no concealment is made or attempted, the language of the cases is, that the misrepresentation furnishes no ground for a court of equity to refuse to enforce the contract of the parties. The neglect of the purchaser to avail himself, in all such cases, of the means of information, whether attributable to his iudolence or credulity, takes from him all just claim for relief.
 

 We have thus far assumed that the evidence in the case before ns discloses false representations on the part of the vendor, but justice to him requires us to say that the evidence is insufficient to warrant this conclusion. The vendor stated to the purchaser that he was not a steamboat man, meaning evidently, from the context, that he was not familiar with the particulars in regard to which the purchaser desired information, and referred him to the statements of the captain, at the sanie time inviting him and his party to examine the boat in every particular. The measurement made by one of his carpenters showed that the boat drew four feet and six inches of water at midships whilst lying unloaded at the dock. The measurement by the other carpenter showed that the boat then drew, forward and aft, three feet and six inches, and both of these measurements were reported to the defendant, and the latter was accompanied by the declaration that the boat drew too much water for his purpose. The captain of the boat also took the defendant on to the dock, by which the boat was lying, and pointed out to him that she was coppered three feet and
 
 *386
 
 nine inches from the keel, and that she then showed only three inches out of water, and, of course, that she then drew, forward and aft, unloaded, three feet and six inches. The purchase was thus made by the defendant, with his eyes open, after every opportunity had been afforded him for the inspection of the vessel.
 

 Decree affirmed.
 

 *
 

 6 Clark & Finnelly, 232.