Simonton, District Judge.
This is a libel in rem. The cause of action is a balance due for work and labor, time and money, expended in and about the care of and repairs to the steamboat Mattano, of which George L. Sheriff is owner. The account is filed with the libel, showing the sum of $5,086.70 charged, with a credit of $3,250 paid, leaving the balance, $1,836.70, stiff due. The answer sets up as a defense overcharges in labor, time, and materials, as well as loss of service and expense incurred from unnecessary delay; It admits $198.19 to be due. At the hearing the district court sustained the defense, and gave libel-ant a decree for $198.19. This decree was affirmed by the circuit court. The case comes here on exception by libelant to this action on the part of the circuit court. On the first day of the term a motion was made by appellees to dismiss the case, as not within the jurisdiction of this court. The cause was heard in the district court, and decree rendered 6th August, 1890; appeal made 3d October, 1890; appeal heard by the circuit court, 29th January, 1892. The joint resolution of March 3, 1891, contemporaneous with the act establishing this court, provides that nothing in said act contained shall be held or construed in any wise to impair the jurisdiction of the supreme court or any circuit court in any case pending before it, or in respect to any case whatever *878 •wherein the writ of error or appeal shall have been sued out or taken to rany of the said courts prior to 1st July, 1891. The appellees contend that this joint resolution preserved the right of the circuit court to hear and determine finally the appeal from the decree of the district court in this case; and that, if this court entertains an appeal from the circuit court, it will impair the jurisdiction of that court. The act of March 3, 1891, gave to this court power to review decrees of the circuit courts in certain cases, among which are cases in admiralty. Section 6; 1 C. C. A. vi. This power was not suspended or limited in any way by the joint resolution of the same date. Railroad Co. v. Amato, (2d Circuit,) 1 U. S. App. 113, 1 C. C. A. 468, 49 Fed. Rep. 881, following In re Claasen, 140 U. S. 200, 11 Sup. Ct. Rep. 735. All that this joint resolution did was to preserve the right of the circuit court to hear appeals from the district court under section 631 of the Revised Statutes in cases then pending, and in proceedings to review such pending cases, taken out before July 1, 1891. When the circuit court has heard and* decided such excepted cases its decrees come under the operation of the act of March 3, 1891, and are reviewable here. The motion was overruled.
We have heard the case on its merits. There is a mass of testimony in the brief. The witnesses are generally consistent with those on the same side with themselves. They differ materially with those on the opposite side. The libelant is in control of a shipyard at Alexandria, which it has heen running for some six years. The respondent claimant lives in Washington, and has been at this yard several times. His vessel, being in need of repair, was evidently in such a condition as made a voyage to Baltimore dangerous, if not impracticable; so he went to the libelant, and made arrangements for repairing and refitting her. A close examination of the testimony fails to disclose any other contract made between these parties than that the steamboat should be put in complete order with dispatch. Nothing was said as to time, of as to the prices to be paid. Nothing definite was said as to the kind of lumber to be used. As the steamer was planked with oak, the claimant assumed that oak was to be used, and supposed that libelant so understood it. He did offer to furnish his own lumber, but was induced not to do so, upon the assurance that this would be made satisfactory. When the first arrangements were made, neither party seemed to have any idea of the extent or character of the repairs needed; and the dilapidated condition which the steamboat was discovered to be in surprised every one. No written agreement was entered into. After a general sort of conversation the steamboat was sent to the yard, put on the railway, hauled up, and work begun. The'master of the steamboat was about the yard constantly, and an agent of the owner, specially thereto appointed, had supervision of the work. A daily abstract was made to him, showing in detail the labor, work done, and material used that day, and was examined by him. In every instance he signed his name to a certificate in this abstract “that the above is in accordance *879 with agreement, and satisfactory.” The work was completed. The owner admits that it is a first-class job, and this seems to be the one thing in which all the witnesses concur. The reasons for the refusal of the respondent to pay the balance claimed upon the bill are formulated in his brief:
For additional expenses incurred by respondent by the unreasonable delay in doing the work ----- $600 00
For profits which the respondent might have made with his boat during the time it was unnecessarily delayed upon the railways ------- - 200 00
For waste of lumber in cutting by hand instead of by saw - 75 00
For overcharge in price of lumber used in the boat - • 441 96
For overcharge of lumber used in scaffolding - - - 52 00
For overcharge for ironing rendering necessary by using pine instead of oak, according to contract - 174 65
For loss of time in sending skilled workman to cull lumber - 75 00
For quantity of lumber spoiled, and time lost in taking it out and doing over a second and third time work improperly done - 50 00
For overcharge of services of carpenter Berry - - - 20 00
Making an aggregate of - $1,638 61
It is not denied that the work, labor, and materials set forth in the bill of particulars were furnished. It is admitted that the repairs to the steamboat was a good job. The libelant presents the certificate of the special agent of the owner as to the correctness of each day’s statement, and its accordance with contract. The burden of proof, then, is on the claimant.
His first item charges unreasonable delay in doing the work, and the additional expense thereby incurred. To this point the owner and the master of the steamboat and Guest, the special agent of the master, speak. The owner complains of delay in putting the boat on the railway and beginning work. He also complains of delay occasioned by want of oak lumber. He says that because of these “she was there near about a month longer than she should have been, or about three weeks at any rate.” In his cross-examination he calls this a “rough guess.” The master attributes the delay to want of lumber, an insufficient supply of hands, and replacing bad work. He estimates the time lost for the lumber at three or four weeks, and that lost for the hands ten or twelve days. Guest speaks of delay in hewing out the logs. The owner represents his expenses at $100 per day. At this rate he charges six days in this item, $600. On the other hand, the witnesses for libelant —Dean, Cooper, Savelle, A. H. Agnew, Day, Tole, Hayden — deny that there was any unnecessary delay, indeed, any delay, but from weather. The record does not show that the owner betrayed any indignation or any great impatience during the work because of delay. He did grumble now and then, to hurry them up. But this is always the case. His special agent, Guest, each day made certificates on the daily abstract, and no sort of complaint appears there. Weighing this evi *880 dence, there being nothing to impeach the credibility of the witnesses, the preponderance is clearly with libelant. At all events, the burden on defendant is not overcome. This item is disallowed.
The next item is for the profits which the respondent might have made with his boat during the unnecessary delay,—1200. Even were we at liberty to go into this item after our conclusion above stated, the evidence upon it is bare conjecture. The owner swears that he would have expected in the neighborhood of $400 for the time lost. The master says that when in business she made on the round trip, which consumed two days, from $261 to $70, an average of $130 gross. He does not know what the expenses are. One or both of these men had access to the books of the boat. They would have given certain testimony, not conclusive, of course, but a guide, perhaps. This loose conjecture is not testimony. The next item is for waste of lumber in cutting by hand instead of by saw,—$75. The agents for the libelant asserted that the yard was as well prepared as any they knew of to do the work, as far as machinery was concerned. They, in their testimony, say that it was so prepared. The respondent says that this was false, as they had no band saws. Dean, the superintendent of libelant, says that band saws are not invariably used in shipyards; indeed, their use is unusual. The respondent insists on this item as if the statement was a warranty. He was in the yard; saw, or could see, for himself, what was in it; could certainly see if they had band saws. Even supposing the statement was an exaggeration, this item cannot be allowed. Slaughter v. Gerson, 13 Wall. 379. “Where the means of information are at hand, and equally open to both parties, and no concealment is made or attempted, the language of the cases is that the misrepresentation furnishes no ground for a court of equity to refuse to enforce the contract of the parties. The neglect of the purchaser to avail himself in such cases of the means of information, whether attributable to his indolence or credulity, takes from him all just claim to release.”
The next item is overcharge in price of lumber used. When the owner went to make his arrangements about his steamboat, he offered to furnish his own lumber. This he states, and it is nowhere denied. They replied that this was not necessary, and that the prices of lumber would be made satisfactory. This also is not distinctly denied. Guest called attention to the charge for lumber in the first abstracts, and his and Sheriff’s objection to it, and was told “that, while he had started signing the abstracts at that price, to continue along, and in the settlement he would make the price of the lumber perfectly satisfactory.” This being so, the full price of $40 per M. cannot be charged. Respondent was misled by the action and words of agents of libelant. This item is sustained.
The next item is not sustained,—^overcharge in lumber for scaffolding,—$52. The evidence upon it is too vague and uncertain. In fact there is no evidence at all of how much lumber was used for scaffolding.
*881 The next charge,—overcharge for ironing rendered necessary by using pine instead of oak, according to contract. As we have seen, there was no contract that oak only was to be used. The pine was used with the knowledge of Sheriff and Guest. The weight of the evidence is that no serious objection was made. The item is not allowed.
The next item is for loss of time in sending skilled workmen to cull lumber. This item is based on the idea that when lumber was wanted a skilled hand went out and selected it, and so lost time. The work should have been done by a common hand. We see no force in this. The plan adopted secured the best pieces of lumber, and prevented loss of time in the rejection of the lumber,—a probable result if selected by an unskilled person. Item disallowed.
The next item is for quantity of lumber spoiled, and time lost in taking it out and doing over a second and third time work improperly done, —§50. Sheriff testifies that this was worth $25. This is explained by Dean, and in no event could be allowed, unless the act was willful, or so careless as to amount to willfulness.
The last item is for overcharge for the services of carpenter Berry,— $20. It seems that the libelant paid Berry, who was a hand furnished by respondent, employed by it at his request, and borne on their roll, $2.75 per day, and charged respondent $3.25. This item should be allowed.
As the result, we allow of these items $461.69, and disallow the rest. The judgment of the circuit court is reversed. Let the case be remanded to that court with instructions to enter a decree for the libelant in the sum of $1,374.74 and costs.