# REPORTS OF CASES

### ADJUDGED IN

# THE COURT OF APPEALS

#### OF THE

## DISTRICT OF COLUMBIA.

## CLARK *v.* HARMER.

PLEADING AND PRACTICE; CROSS-EXAMINATION; EVIDENCE; CON-
TRACTS; FRAUD; CONFLICT OF LAWS; ESTOPPEL.

1. A motion to strike out the testimony of a witness because of his
failure to appear, as requested by counsel, upon an adjourned
day for further cross-examination, is properly denied where
such witness was partly cross-examined, and no notice of the
fact that further cross-examination of him was desired was
given to the court.

2. A statement by one of the parties to an agreement, not made in
the presence of the one against whom it is sought to be used,
by the party making it, or at a time or under circumstances
in which it could be held to bind him in any way, is properly
excluded.

3. Fraudulent representations which render a contract null and void,
or voidable at the instance of the parties defrauded, will invali-
date a subsequent contract between the parties which does not
abrogate the previous contract, but only modifies its terms and
is based thereon, the falsity of the representations not having
in the meantime been discovered by the parties defrauded.

4. Upon a plea setting up the defence of fraud to the actual contract
sued on, it is competent for the defendant to show that the fraud
complained of occurred in the procurement of a contract for
which the contract sued on was a substitute, or of which it was
a modification.

5. That a contract is made subject to an investigation by a party on
the one side, does not relieve a party on the other side from the
consequences of fraudulent representations. It is only where
the means of knowledge are at hand and equally available to

both parties, that a purchaser cannot be heard to say that he was deceived by a vendor's misrepresentations.

6. In an action on a contract, where the defense relied upon is fraud in the procurement of the contract, it is proper for the trial court to instruct the jury to find for the defendant if they find that upon discovery of the fraud and within the time limited by the agreement he had repudiated the contract and notified the plaintiff that he would proceed no further; and that he was justified in repudiating the contract on the ground of fraud without personal investigation of the truth or falsity of the plaintiff's representations.

7. In an action at law, it is the conclusion of a declaration, and not its detailed statements, to which a plea is required to be directed.

8. A contract executed in this District for the purchase of an option to purchase land in Maryland is to be construed with reference to the laws of that State regarding real estate; and is within the provisions of the Code of Maryland, Art. 50, Sec. 13, that no instrument of writing shall be construed to create an estate in joint tenancy unless it expressly so provides.

9. And in such case, where the right is reserved to the purchasers by the contract to withdraw from the purchase within a time limited on notice to the vendor and redelivering possession, it is competent for one of the tenants in common, before taking possession either in person or by his co-tenants, to withdraw from the purchase by giving the required notice and thereby relieve himself from obligation under the contract.

10. An assignment by one of the parties of the second part of a contract for the purchase of an option on land will not estop him to exercise a right reserved in the contract to withdraw from the purchase, and thereby to prevent a recovery against him.

No. 559.   Submitted April 21, 1896.   Decided May 6, 1896.

HEARING on an appeal by plaintiff from a judgment on verdict in an action of covenant.   *Affirmed.*

The COURT in its opinion stated the case as follows:

This is the second appeal in this case. In the opinion rendered upon the former appeal, reported in 5 App. D. C. 114, the principal facts are stated, and therefore need not here be repeated. Upon that occasion the judgment of the Supreme Court of the District of Columbia in the case was reversed, and the cause was remanded for a new trial.

When the cause went back, there was an amendment of the declaration by the plaintiff, Benjamin W. Clark, the appellant here; and the defendant, Alfred C. Harmer, the appellee, pleaded anew. The plaintiff's amendment did not materially alter his case. The new pleas interposed by the defendant were five in number, and for the first time distinctly set up a defense not made by the former pleas, to the effect that the contract sued on by the plaintiff, which was an option for the purchase of some property in Montgomery County, in the State of Maryland, had been procured from the defendant by false and fraudulent representations made to him by the plaintiff, that certain rich specimens of gold ore exhibited by the plaintiff to the defendant had been dug up from the said property; and that, upon the discovery by him of the fraudulent character of such alleged representations and before the time limited in the agreement for its consummation, the defendant had exercised the right reserved to him of withdrawing therefrom, and so notified the plaintiff and the other persons concerned in the transaction. Upon these pleas the plaintiff joined issue, and the parties went to trial.

At this second trial of the case, the plaintiff proved the agreement sued on, which bore date on February 2, 1888, and purported to have been signed by himself, by the defendant Harmer, by Moritz Lippman, and Simon D. Newcomb, who were also parties to it; also, an assignment of the contract by Harmer and Lippman to H. S. Louchheim, of Philadelphia, purporting to bear date on February 3, 1888; also, a previous agreement of December 15, 1887, between the same parties, out of which the agreement of February 2 grew, and of which it was, in a measure, only a modification; also, a lease of the property, which was the subject of these agreements, for one year, with the right to develop it for minerals, executed by one Lynch, the owner of the property, on October 31, 1887, to one George W. Kirk, with the right to purchase the property within the

year for $15,000; of which lease and privilege of development there was an assignment by Kirk to the plaintiff Clark under date of December 8, 1887, with the right to purchase within six months thereafter; also, a deed of conveyance of the property by Lynch, the owner, under date of February 23, 1888, to Moritz Lippman, trustee, in fee simple, for $12,000. None of the documents so introduced in evidence seem to have been the original documents, but only transcripts from the land records of Montgomery County, Maryland.

The plaintiff was then called to testify as to the transaction between himself and the defendant. The gist of his testimony, so far as it need be here referred to, was that Harmer and Lippman never manifested to him in any way that they did not choose to go on with the development of the property during the ninety days within which they were free to withdraw from the option, but that they did go on with it for a considerable time after the expiration of that period, thereby fixing, as it is claimed, their liability to the plaintiff under the contract. During the course of his examination in chief, exception was taken on his behalf to a question propounded to him by his counsel as to his understanding of the relations between Harmer and Lippman, and which was excluded by the court; but as there is no assignment of error based on the exception, and it was not referred to before us, either in the briefs or the oral arguments of counsel, it need not be further noticed.

Newcomb was called in corroboration of the plaintiff. The development or prospecting testified to by both of these witnesses was stated by them to have been done by Lippman; and it was sought to connect Harmer with it only by legal inference.

On behalf of the defendant, Lynch, the owner of the property at the time of the execution of the contract upon which the suit is brought, testified that his option to Kirk was for $12,000 not for $15,000, thereby indicating that the writing

had been altered; that there never was any valuable gold ore taken from his farm; and that there was no vein or deposit of gold on that property that it would pay to mine.

Counsel for plaintiff had cross-examined this witness to some extent on Friday afternoon, January 17, 1896, when, at the usual hour of adjournment, the court was adjourned until Monday, January 20, 1896. At the opening of the court on the latter day, Lynch was called by the counsel for the plaintiff for further cross-examination; but he failed to respond. It appeared that he had been requested both by counsel for the plaintiff and counsel for the defendant to return on Monday. But it seems that there had been no notice to the court that he would be further wanted. The court directed that the case should proceed, and that this witness could be further examined if he came in before the evidence was closed. He did not come in before the defendant's testimony was closed; and thereupon, when that testimony had been closed, counsel for plaintiff moved to strike out his testimony, on the ground that there had not been opportunity to cross-examine him as far as counsel wished, and he had been notified by counsel to be present on Monday morning, and had not come; and on the ground, also, that there was no testimony to show that the plaintiff Clark had any knowledge that the option from Lynch to Kirk was for $12,000, as Lynch testified, and not for $15,000. But the court denied the motion, for the reason, as stated, that Lynch had in fact been cross-examined, and had been permitted to depart without notice to the court that further examination of him was desired. To this ruling of the court exception was taken on behalf of the plaintiff; and the ruling is here assigned as error.

The defendant was called to testify on his own behalf. The substance of his testimony, so far as it bears on the questions before us, was that Clark had importuned him to take an option on the Lynch property; that he had shown him rich specimens of gold ore which he (Clark) had stated

came from the Lynch farm and the adjacent Harrison farm; that Clark had stated to him that he (Clark) and Kirk had been prospecting upon that farm, and they were certain that there were deposits of gold there which would surprise everyone; that Clark said to him that he had an option on the property for $15,000; that the witness had mentioned the matter to Lippman, with whom he had other business relations, in reference to which Lippman had come to Washington to see him; and that, upon the representations so made to him, and the specimens of ore shown to him, he and Lippman had signed the agreement of December 15, 1887, which led to the subsequent agreement of February 2, 1888. Harmer further testified that, before the expiration of the ninety days specified in the agreement, he had given notice to the plaintiff Clark, to Newcomb, Lippman, and all whom he thought to have an interest in the transaction, that he would not purchase the property and would not proceed further in the matter; that he had given Clark such notice before his transfer of the agreement on February 3, 1888; that he had never worked the property or taken any part in its development; that he had found out that the whole affair was a deception and a fraud; that he knew nothing of the deed from Lynch to Lippman, trustee; that Lippman was not trustee for him, and he had no interest under the deed; and that he did not know where Lippman was. He stated further that he had never been upon the property but once in his life, and that was when he ascertained the true situation.

The plaintiff Clark was then called in rebuttal. Among other questions which he was asked, with reference to an interview which he had testified to have had with Lippman on the occasion of a visit by both to adjoining property in Montgomery County, in which Harmer does not seem to have been present, there was this question propounded to him by his counsel: "What did you say about there being gold on this Lynch farm, or specimens of gold from it?"

This question was ruled out by the court as being examination in chief, and not proper rebuttal; and counsel for plaintiff seems to have taken an exception to the ruling, although the record does not distinctly so state. Upon this ruling an assignment of error is based.

At the close of the testimony there were thirteen requests presented on behalf of the plaintiff for instructions to the jury, and two on behalf of the defendant. The two latter were given by the court; and five of the thirteen requested for the plaintiff. Exceptions to the several rulings were reserved by the plaintiff. The court then charged the jury of its own motion; and there were exceptions taken by the plaintiff to two or three passages in the charge, as well as to the whole charge. The verdict of the jury was for the defendant; and there was judgment thereon. From that judgment the plaintiff has appealed, and he has assigned thirteen errors for which he seeks to reverse the judgment.

*Mr. Westel Willoughby* for the appellant.

*Mr. A. A. Lipscomb* and *Mr. Philip Walker* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

1. Not much consideration is demanded for the three assignments of error—those numbered 11, 12, and 13—with respect to the admission or exclusion of certain testimony. The refusal of the court to strike out the testimony of Lynch was manifestly proper, upon the grounds given for the refusal. Most assuredly that testimony should not be stricken out because, as claimed, there was no testimony to show that Clark knew that the option was for $12,000, and not for $15,000. That was precisely one of the things which the testimony of Lynch tended to prove, and one of the things to be considered by the jury.

No greater consideration is due to the assignment of error based on the ruling of the court in the exclusion of a question put to the plaintiff in rebuttal, whether there was gold upon the premises, or rather what he had said to Lippman

about there being gold on the Lynch farm. The statement, which it was sought to elicit, was not made in the presence of Harmer, or at a time or under circumstances in which it could be held to bind the rights of Harmer in any way, and it seems that it would have been objectionable for that reason as examination in chief, no less than as rebuttal. It is argued, however, that it was proper in rebuttal of the testimony of Lynch, who had stated that there was no gold upon the farm that would pay.

It is difficult to see how the proposed testimony, even if it were otherwise unobjectionable, could be regarded as in rebuttal of the statement of Lynch. That statement implied that there was gold upon the premises, but not in quantity that would pay for development. It was not sought to controvert this latter fact; and testimony cannot with any propriety be said to be in rebuttal when it is to the same effect as the testimony which it is supposed or proposed to rebut. There is no ground in the record for the complaint of the plaintiff in his brief that "the plaintiff was not allowed to show by any witness that there was actually gold upon the premises." There is nothing in the record to indicate that the plaintiff sought to show this fact, if fact it is, by any other witness than the plaintiff himself, or by the plaintiff himself in any other way or at any other time than by the question recited.

Complaint is also made that one Kirk, a son of one of the parties connected with the transaction, as heretofore stated, was not allowed to testify that the written option given by Lynch to his father was for $15,000, as stated in the transcript offered in evidence, and not for $12,000, as testified by Lynch; and one of the plaintiff's assignments of error is based upon the refusal of the trial court to allow this testimony. But it is sufficient to say in regard to this that the proposed method of proving by oral testimony the contents of a written instrument is in contravention of the elementary rules of evidence.

2. One of the assignments of error is that the trial court should have granted an instruction requested by the plaintiff peremptorily directing a verdict for the amount claimed in the declaration. It must usually be a very plain case that would justify the giving of such an instruction on behalf of a plaintiff. We find no such plain case here, but quite the reverse of it. The instruction was sought in this instance upon the ground that the only defence set up against the suit was that the contract sued on had been procured by false and fraudulent representations on the part of the plaintiff; that the only proof on the part of the defendant as to such false and fraudulent representations had reference to the contract of December 15, 1887; and that there was no proof as to any such representations with reference to the contract of February 2, 1888. But the contract last mentioned was based upon the contract of December 15, 1887. It did not abrogate the previous contract; it only modified its terms. In fact, it provided that the previous contract should stand, except in so far as it was modified by the new agreement. And the new agreement was not, and did not purport to be, a reformation of the preceding agreement so as to purge that preceding agreement of any taint of illegality attaching to it. Indeed the plaintiff himself found it necessary to introduce in evidence the contract of December 15, 1887, and to make it the foundation of his case. If, therefore, this contract of December 15, 1887, was procured by false and fraudulent representations, and was for that reason null and void, or voidable at the instance of the parties defrauded, it necessarily follows that the subsequent agreement must fall with it, unless the parties have in the meantime discovered the fraud, and have entered into the new contract with full knowledge thereof. For, under the circumstances, the second agreement is only part of the first; and if the foundation of the first contract is fraud, the second can have no other or better foundation. It is well settled both at law and in equity, that fraud will

vitiate even the most solemn transactions, and that any asserted title to property founded upon it is utterly void. *U. S.* v. *The Armistad*, 15 Pet. 518. This case is somewhat analogous to that of new security given for a usurious transaction, with reference to which it is the undoubted law that every subsequent security for a loan originally usurious, however remote or often renewed, is void. *Walker* v. *Bank of Washington*, 3 How. 62. Fraud is certainly no less objectionable and no less permeating than is usury ; and fraud is not purged, any more than usury is, by substituting one security for another, when there has been no intervening discovery of the fraud. It was quite competent, therefore upon a plea setting up the defense of fraud to the actual contract sued on in this case, for the defendant to show that the fraud complained of occurred in the procurement of a contract for which the contract sued on was a substitute, or of which it was a modification.

Nor is it any answer to this defence of fraudulent representations that the agreement of December 15, 1887, purported on its face to be " entirely subject to a satisfactory investigation by said Harmer and Lippman." It does not follow that, because a contract is made subject to an investigation by a party on one side, a party on the other side is thereby relieved from the consequences of fraudulent representations. Reason and authority are unanimously to the contrary. It is only where the means of knowledge are at hand and are equally available to both parties, that a purchaser cannot be heard to say that he was deceived by a vendor's misrepresentations. *Slaughter* v. *Gersom*, 13 Wall. 379. But if the defendant's testimony is to be believed— and the jury, who were the judges of the credibility of that testimony, seem to have believed it—there were representations made in this case by the plaintiff to the defendant, the truth or falsehood of which no amount of ordinary prudence or investigation would have enabled the defendant to ascertain. The contract of February 2, 1888, is silent as to the

matter of investigation by the defendant or Lippman.  The contract of December 15, 1887, purports to be subject to a satisfactory investigation by Harmer and Lippman; but the investigation contemplated by that contract could not well have enabled Harmer and Lippman to ascertain whether the specimens of ore exhibited by the plaintiff had in fact been extracted from the Lynch farm.  But if such investigation did, in fact, develop the falsehood of the alleged representations, as might well be inferred from the testimony, the right of the defendant to repudiate the contract was reserved to him by the contract itself; and the whole matter, therefore, was properly submitted to the determination of the jury.

3. What we have just said in regard to this first assignment of error will apply also to the assignments numbered 3, 9, and 10.  Of these, the third assignment is founded upon the refusal by the trial court of the plaintiff's fourth prayer for instruction to the jury; which was, in effect, that if defendants made an examination for themselves through Lippman as to the mining value of the property in question, the contract could not be annulled for fraud.  But the representation, as claimed by the defendant Harmer to have been made to him, was that certain specimens of ore exhibited to him had been taken from the property, and the inducement thereby held out to him was that they were but specimens of such ore as would be found in paying quantity upon the farm ; and if the investigation that was made, or any other inquiry, developed the falsehood of this representation, as Harmer claims it did, this was undoubtedly good reason for vacating the contract on the ground of fraud; and the instruction plainly was one not proper to be granted.

The ninth assignment is founded upon the granting of the defendant's second prayer, for instruction to the jury, which was, in substance, that, if the contract of February 2, 1888, was brought about by fraudulent representations on the part of the plaintiff, and that Harmer within ninety

days thereafter, having discovered the falsity of these representations, repudiated the agreement and notified the plaintiff that he would proceed no farther, they should find for the defendant. And the tenth assignment of error is founded on a statement in the charge of the court to the jury, that the defendant Harmer was justified in repudiating the agreement on the ground of fraud without personal investigation of the truth or falsity of any representations of the plaintiff. The two instructions here complained of by the plaintiff are entirely proper and correct statements of the law. If there is, in fact, fraud in a transaction, we fail to see of what importance it is how it has been discovered.

4. The second assignment of error alleges that the jury should have been instructed, as requested in the second prayer for instruction submitted on behalf of the plaintiff, that " if the jury believe from the evidence that the instrument sued on is the agreement of the defendant, not induced by fraud, then the verdict must be for the plaintiff, for the reason that the defendant does not by his pleas deny the allegations of the declaration that the defendants took possession of the property described in said declaration, that they worked it for a considerable time after the expiration of the said ninety days, and that they have never delivered, or redelivered, or offered to redeliver said property or options or either of them to the plaintiffs." Undoubtedly the trial court was fully justified in refusing this instruction, for it assumes a condition of the pleadings which the record does not show to have existed. The defendant's fourth plea avers that within ninety days after the execution of the contract of February 2, 1888, the defendant, in accordance with the express provision of the contract, notified the plaintiff that he did not desire to continue the development of the property, and that he surrendered to the plaintiff all claim under the agreements between them ; and the fifth plea avers that within the said period of ninety days the defendant notified the plaintiff that neither he nor Lippman would

purchase the property or further work the same, and that the plaintiff acquiesced therein. These pleas, if sustained by the proof, were a sufficient defense to the action, and the defendants were not required to deny each and every allegation of the declaration. This is a suit at common law and not a proceeding in equity, and it is the conclusion of a declaration, and not its detailed statements, to which a plea is required. It is of no consequence in this regard that the defendant did not specifically deny the statements recited in the prayer for instruction, and not all of which are specifically contained in the plaintiff's declaration.

5. Another assignment of error has reference to the charge of the court with reference to the materiality of the representation that the offer to purchase given by Lynch was for $15,000, when the testimony of Lynch himself was that it was for $12,000. The plaintiff requested the following instruction on this subject, which was refused : " If the jury find that, when the deed was taken from Lynch by Lippman, trustee, the parties Harmer and Lippman knew that the property could be purchased for $12,000, and that the purchase was made for that sum, and no objection was then made that the option had been represented at the sum of $15,000, then the defendant cannot now make the objection that it was represented to be $15,000." The testimony as to the repudiation of the contract by Harmer is all to the effect that such repudiation occurred before the execution of the deed to Lippman, trustee, and that Harmer knew nothing of that deed, and had no interest whatever under it. It is difficult therefore, to see why he should be precluded from showing the falsity of an important, though perhaps not a controlling, statement in the series of representations claimed to have been made to him. If, for the purpose of operating upon Harmer, the plaintiff, or the plaintiff and Kirk, altered the instrument of writing by which they derived their option from Lynch in so important a matter as the amount of money specified in that option, whatever may

have been the special purpose which they sought thereby to subserve, it was proper for the defendant to show the misrepresentation ; and the variation was a matter proper to be considered by the jury, with other circumstances in the case. This is what the court told the jury in its charge in regard to it ; and that much it was entirely proper to say. This circumstance was not segregated from the other circumstances in the case, and unduly magnified. The jury were told that they might give it " such weight and importance as they might find should attach to it."

6. The remaining assignments of error—namely, the fourth, fifth, sixth and eighth—raise the question as to the defendant Harmer's right to relieve himself from the obligation of the contract within the ninety days specified in the agreement ; and these are the only assignments that seem to require any serious consideration from us.

The fourth assignment is founded on the refusal of the court to give the sixth instruction requested by the plaintiff, which is as follows : " If the jury believe from the evidence that an assignment was made by the parties Harmer and Lippman on the third day of February, 1888, to H. S. Louchheim of all their right, title and interest in the agreement of February 2, 1888, it was then beyond the power of the defendant Harmer to affect the claim of the plaintiff by his disclaiming all interest therein, or by offering to surrender to the plaintiff what he had received."

The fifth assignment arises out of the refusal of the trial court to give the seventh instruction requested by the plaintiff, which was in the following terms : " If the jury believe from the evidence that a deed from Lynch to the said Lippman, trustee, of the property in question was accepted by the said Lippman on the 23d day of February, 1888, with the acquiescence of the said Harmer, then this constituted a complete acceptance of the agreement before the expiration of the ninety days, and no disclaimer by the said Harmer of any interest in the property or offer to surrender

the property after that time could affect the claim of the plaintiff."

The sixth assignment arises out of the refusal of the trial court to give the eighth instruction requested by the plaintiff, which was as follows: " No disclaimer of Harmer alone or offer to return his interest in the property could defeat the claim of the plaintiff. In order to defeat such claim, it was necessary that the decision not to purchase or work further the said property should have been made by both Harmer and Lippman, and the redelivery of the property and of all options, as provided by the said agreement, should have been made of all the interest of both of said parties."

The eighth assignment of error arises out of a portion of the charge given by the court of its own motion to the jury, wherein the court told the jury as follows: " First, in respect to the subject of fraud, I instruct you that, if you believe from the evidence that before the expiration of the ninety days after the agreement of February 2, 1888, the defendant Harmer notified Clark and Lippman and Newcomb that he would not purchase the said Lynch farm, or further work the same, and had abandoned all his rights under the said agreement, and that he had in fact abandoned his rights under the said agreement, and had no interest, directly or indirectly, in the purchase of the said Lynch farm by Lippman, trustee, by the deed from Lynch and wife to Lippman, trustee, and contributed nothing toward such purchase, then you must find for the defendant."

The theory of the instructions requested by the appellant and rejected by the court, and which was negatived in the charge actually given by the court, is that the defendants Harmer and Lippman by their agreement became joint obligors to Clark and joint tenants of the property in question, and that neither one could withdraw from the agreement without the consent and concurrence of the other; and especially that, after their assignment to Louchheim of February 3, 1888, they were absolutely precluded from with-

drawing from it.    But this, in our opinion, is an erroneous view of the law as applicable to this case.

The contract, although executed in the District of Columbia, is a contract for the purchase and sale of an interest in real estate in the State of Maryland, and must be construed with reference to the laws of that State regarding real estate.   The Code of Maryland (Art. 50, Sec. 13) provides that " no deed, devise or other instrument of writing shall be construed to create an estate in joint tenancy unless in such deed, devise, or other instrument of writing, it is expressly provided that the property thereby conveyed is to be held in joint tenancy."   Whatever interest, therefore, Harmer and Lippman acquired under the contract, they acquired as tenants in common, and not as joint tenants; and the plaintiff must be presumed to have contracted with them as tenants in common, and with each one for his own undivided half of the property.   Consequently, it was entirely competent for Harmer and Lippman to act separately and severally with regard to their respective interests.   It is true that, in our opinion on the former appeal in this case and with reference to the condition of the testimony in the case at that time, we said :

" The defendants did take possession, according to this proof, Lippman actually, and Harmer constructively, through him.   Possession taken under the agreement by one joint tenant inured to the benefit of both ; and in the absence of proof to the contrary, must be presumed to be on joint account and for joint benefit.   Plaintiff, observing that possession had been taken and that work was progressing in accordance with the agreement, was under no obligation to inquire whether Harmer was still acting with Lippman, or had assigned or abandoned his interest."

This was said, as we have stated, with reference to the condition of the testimony on the former trial, where the jury had been directed to return a verdict for the defendant upon the plaintiff's testimony, and where it did not appear,

as it now appears, that Harmer had sought in any manner to sever his interests from those of Lippman, and independently of Lippman to notify Clark of his abandonment of the contract. We there distinctly reserved the right to Harmer to show by competent testimony that possession had not been taken by Lippman on the joint account, and that he (Harmer) had notified Clark that he was not acting with Lippman, but had abandoned his interest. This Harmer sought to show in the trial, the result of which is now before us for review, and we must hold that as a tenant in common he was entitled so to do, and that the court below was right in instructing the jury that if they were satisfied from the testimony that he had done so in due season he was entitled to their verdict in his favor.

There is considerable effort expended on behalf of the appellant to show that it was the duty of Harmer to redeliver to Clark the possession of the property and of the options to purchase as they are called. But if Harmer had the right to act independently of Lippman, as we hold that he had as being merely a tenant in common, it is not apparent how he could redeliver possession of the property to Clark without the concurrence of Lippman. The legal intendment of the contract was that both parties, Harmer and Lippman, as tenants in common, or either one for himself, upon the withdrawal or renunciation of the other, might proceed to work the property and acquire the title. The withdrawal of Harmer, if it occurred, as testified to by him, before any possession taken or work done or title procured by Lippman, that could be construed to have been for their joint benefit, left Lippman free to enter upon the possession or to retain it if he had already entered upon it and to acquire the title for himself.

Greatest reliance is placed by the appellant on the assignment of February 3, 1888, by Harmer and Lippman to Louchheim as being an absolute bar to either one or both

9 Ct. App.—3

of them thereafter from withdrawing from the contract. But we think the court below was right in refusing to give to that assignment the force and effect claimed for it by the appellant.

In our opinion upon the former appeal, when it was argued on behalf of the appellee that the record, or apparent record, of this assignment upon the land records of Montgomery County, Maryland, was notice to Clark of Harmer's withdrawal and abandonment of interest under the contract, we held that it was not such notice; and we added : " If he (Clark) was entitled to notice by Harmer of his intent to go no farther at the end of the ninety days, which we have held he was, the notice must have been given directly or in such way as to fasten actual knowledge upon the plaintiff." This undoubtedly left it open to show such notice, notwithstanding the assignment; and the appellee has sought in the second trial to give proof of such actual notice and disclaimer of interest by him. Whether he succeeded in adducing satisfactory proof of the fact, was for the jury to determine. At common law, the parties to the contract of the second part could not convey their interest to any one else so as to defeat the rights of the party of the first part; and it follows logically that any such attempted conveyance should not preclude the parties of the second part from exercising their rights under the contract. It is only in equity that the assignee is recognized as entitled to the benefit of the contract under the assignment, and even there only subject to the equities subsisting against his grantors, whether those equities have arisen out of matters *in pais* or otherwise. If the appellant claims and recognizes the assignment as an estoppel on the part of the appellee from claiming the rights reserved to him under the contract, he himself should be estopped thereby from enforcing the liability of the appellee. It cannot be that, either at common law or in equity, a party shall have the benefit of an instrument

of writing and repudiate its burdens.    Certainly in this suit this assignment can have no such effect.

The record of this case leaves some portions of the transaction between the parties in considerable obscurity.    But we cannot say that, on the record as made, there has been any error committed by the court below upon the trial of the case.    The question of the alleged fraud in the procurement of the contract sued on seems to us to have been fairly, and with due regard to the rules of law, submitted to the determination of the jury, and we do not think that their verdict should be disturbed.

We are of opinion that the judgment of the Supreme Court of the District of Columbia in this case should be *affirmed, with costs.    And it is so ordered.*