HINGSTON et al. v. L. P. & J. A. SMITH CO.

(Circuit Court of Appeals, Sixth Circuit. April 8, 1902.)

No. 992.

1. CONTRACTS—FRAUDULENT REPRESENTATIONS—RIGHT OF RELIANCE.

A party making a contract to dredge a harbor, and being some distance from the harbor at the time, is entitled to rely on the representations of the other party, who has done a portion of the work and had access to the chart showing soundings, as to the thickness of the rock to be removed, and is not required to investigate the facts himself, and, such representations being relied upon and being false and known to the party making them to be so, is not bound by the contract.

2. SAME—MATTERS OF OPINION.

Representations made after soundings had been taken in the harbor for the purpose of ascertaining the character of the work, and a chart thereof made with which the party making the representations was familiar and the other party not, were not mere expressions of opinion, but were matters of fact, which could be relied on, though not accompanied with specific statements as to actual measurements having been made.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

W. M. Duncan, for plaintiffs in error.

George B. Marty, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge. This action was brought to recover damages alleged to have been sustained by the plaintiff, the L. P. & J. A. Smith

Company, for an alleged breach of contract made with the defendants, Hingston et al., for certain dredging in the harbor of Ashtabula. The defendants alleged that the contract upon which a recovery was sought was obtained by certain fraudulent misrepresentations, among others that the rock which it was necessary to remove under the terms of the contract would average a foot in thickness, which representation was false and untrue, and known to be such when the representation was made, and that the falsity thereof was unknown to the defendants, who made said contract believing said statements to be true and in reliance thereon. Other allegations were made in the answer, unnecessary to notice in the disposition we shall make of this case.

The court charged the jury among other things, as follows:

"If you find that Smith, the agent of the plaintiff, and Hingston, one of the defendants, had equal opportunities of obtaining information as to the character. location, and amount of the work to be done, then, as a matter of law, Hingston had no right to rely upon representations made by Smith, but it was his duty to inform himself as to these matters."

To understand the relevancy of this charge, it is necessary to know something of the facts which the testimony tended to develop. The dredging which Hingston & Co. undertook to do for Smith & Co. was in the completion of a contract to remove certain materials from the harbor at Ashtabula, in order to deepen and improve the same for the purposes of navigation. Smith & Co. had already done a considerable portion of the work. The harbor was to be excavated to the depth of 20 feet, the rock and dirt removed where the channel was not of that depth, so as to give 20 feet of clear water. For the purpose of knowing the character of the work to be done, soundings had been taken and a map or chart prepared showing the excavation to be made in carrying out the work. This chart was accessible to the Smiths, and, doubtless, known to them. The character of the work was so far developed that the jury might find it to have been known to the Smith Company's representative when he made the contract with Hingston which has given rise to this suit. The contract was made at Buffalo, a very considerable distance from Ashtabula. Hingston gave testimony tending to show that he did not know the nature and character of the work necessary to be done in carrying out the contract, and relied upon the representation made to him by Smith as to the thickness of the rock excavation to be made. The testimony shows that the thickness of the rock to be removed was a very material circumstance in view of the fact that the work was paid for by the cubic yard, and thick rock could be more profitably handled than thin layers of rock could be. In this situation of affairs is it sound law to say that Hingston might not rely upon the representations of Smith as to the thickness of the material to be excavated? In a sense it is true that Hingston had equal opportunities with Smith to know the character of the work to be done, and by going to Ashtabula he might have inspected the work and examined the chart. But was he bound to do so? Undoubtedly a party may not shut his eyes to facts which are apparent at the time of making a contract in blind reliance upon the assurance of another that things are not what his senses, if used, would show him they, in fact, are. The rule is well stated in

Slaughter's Adm'r v. Gerson, 13 Wall. 379–383, 20 L. Ed. 627, cited to sustain the charge of the court below, wherein Mr. Justice Field says:

"Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by overconfidence in the statements of another."

The important condition that the means of information be at hand is not to be overlooked. The matters directly before the party which may be observed he must be presumed to see. But does the reason or the justice of the rule apply where the subject-matter is not present, but distant from the contracting parties? In such case, where the party making the representation has had means and opportunities to know the facts concerning the subject-matter of the contract which the other party has not had, and cannot have without going to the expense and delay of an investigation of matters at a distance, we see no reason why he may not rely upon such representations of fact. In our opinion, the party making such representations cannot be heard to say, "Their falsity might have been known by an investigation of the facts, and had the other party not been so credulous as to rely upon my representations he would not have been deceived." The rule is thus stated in Bigelow, Frauds, 67:

"Every contracting party, not in actual fault, has a right, however, to rely upon the express statement of an existing fact, the truth of which is known to the contracting party who made it, and unknown to the party to whom it is made, when such statement is the basis of a mutual engagement. He is under no obligation to investigate and verify the statement, to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith."

This statement is taken almost verbatim from the opinion in Mead v. Bunn, 32 N. Y. 275–280, and is amply sustained by the authorities. McClellan v. Scott, 24 Wis. 81–87; Hale v. Philbrick, 42 Iowa, 81; Faribault v. Sater, 13 Minn. 228 (Gil. 210); David v. Park, 103 Mass. 501; Savage v. Stevens, 126 Mass. 207; Erickson v. Fisher, 51 Minn. 300, 53 N. W. 638; Henderson v. Henshall, 4 C. C. A. 357, 54 Fed. 320.

In view of the superior knowledge which the testimony tended to show was possessed by Smith as to the nature and character of the work to be done in the execution of the contract entered into, we think it was error to instruct the jury that Hingston had no right to rely upon these material representations, which, if untrue, were misleading and prejudicial.

In this connection the jury were further instructed:

"Statements of what condition of things exist beneath the water, made between people whose business it is to deal with things below the water, must be regarded as conjectures, as statements of opinion merely, unless there goes with such statements the assertion of a fact with respect to actual measurements having been made, of which report is sought to be given."

We think this statement, in view of the facts shown, is too broad and liable to mislead. The thickness of the rock to be excavated after the soundings were made was not mere matter of opinion. It was a matter of fact which Smith, there was testimony tending to show, assumed to know and state. Expressions of opinion as to things in their nature not capable of being known, as the prospects of an unopened mine and the like, may not be relied upon, but matters of fact capable of positive knowledge may be the subject of representations for which one may be held liable. In the present case the statement as to the average thickness of the rock to be excavated, under the charge given, could not be relied upon unless statements of actual measurement were made in the same connection which were false. But if the testimony disclosed that the facts as to the thickness of the rock to be excavated might be within the knowledge of Smith resulting from measurements or other means with which he was familiar, and which were unknown to Hingston, such representations may become material, although unaccompanied with specific statements as to measurements. The charge in this respect should be modified in a retrial of the case.

For error in the respects pointed out the judgment will be reversed, and a new trial awarded.