[Civil No. 1064.   Filed March 20, 1909.]

[100 Pac. 795.]

MITCHELL MINING COMPANY, a Corporation, Plaintiff and Appellant, v. A. T. HAMMONS, Defendant and Appellee.

1. MINES AND MINERALS—TRANSFER OF CLAIMS—RESCISSION BY PURCHASER—FALSE REPRESENTATIONS.—The purchaser of mining claims cannot have the contract rescinded for false representations of the vendor, the deal not having been closed till three months after the purchaser sent mining experts to examine the property, and it thus having had at least the means of readily acquiring knowledge of the facts.

APPEAL from a judgment of the District Court of the Second Judicial District, in and for the County of Gila. Frederick S. Nave, Judge. Affirmed.

The facts are stated in the opinion.

Rawlins & Little, for Appellant.

False and fraudulent representations will avoid a contract. Where the purchaser buys upon the representation of the seller, relying on its truth, then the representation in effect amounts to a warranty, and the seller is bound to make good the representations. *Smith* v. *Richards*, 13 Pet. 26, 10 L. Ed. 42.

Where a man gives to another a power of attorney authorizing that other to act for him in the sale of property. and the

attorney in fact is successful in making the sale by means of false and fraudulent statements and representations, and the principal receives from his attorney in fact the consideration paid such attorney for making the sale, or any part thereof, the injured party, upon the discovery of the fraud, has the right in equity, upon making proper deeds of reconveyance, to demand that the principal who has received the fruits of his agent's fraudulent conduct will be compelled to rescind, and such principal will be required to refund to the injured party the consideration paid by him to the attorney in fact. *Forster* v. *Wilshusen,* 14 Misc. Rep. 520, 35 N. Y. Supp. 1083; *Lynch* v. *Mercantile Trust Co.,* 18 Fed. 486, 5 McCrary, 623; *City Nat. Bank of Birmingham* v. *Dunn,* 51 Fed. 160; *Continental Ins. Co. of N. Y.* v. *Insurance Co. of Pa.,* 51 Fed. 884, 2 C. C. A. 535; *Krumm* v. *Beach,* 96 N. Y. 399.

Stoneman & Jacobs, for Appellee.

"Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations." *Slaughter* v. *Gerson,* 13 Wall. 379–383, 20 L. Ed. 627, 628; *Southern Development Co.* v. *Silva,* 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 678, 15 Morr. Min. Rep. 435; *Farrar* v. *Churchill,* 135 U. S. 609, 10 Sup. Ct. 771, 34 L. Ed. 246; *Wood* v. *Carpenter,* 101 U. S. 141, 25 L. Ed. 807, 809.

"The common law affords to everyone reasonable protection against fraud in dealing, but it does not go to 'the romantic length of giving indemnity against the consequences of indolence and folly or careless indifference to the ordinary and accessible means of information." *Bianconi* v. *Smith,* 3 Ariz. 320, 28 Pac. 880.

"If the purchaser investigates for himself, and nothing is done to prevent his investigation from being as full as he chooses, he cannot say that he relied on the vendor's representations." *Farrar* v. *Churchill,* 135 U. S. 609, 10 Sup. Ct. 771, 34 L. Ed. 250; *Southern Development Co.* v. *Silva,* 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 678, 15 Morr. Min. Rep. 435.

"It is no part of the duty of a court of equity to relieve a purchaser from a foolish bargain after it has been fully con-

summated." 24 Ency. of Law, p. 612; *Atlantic Delaine Co.* v. *James,* 94 U. S. 207, 24 L. Ed. 112.

"Where parties cannot be placed in *statu quo* the court will grant relief only where the strongest equities require it." *Grymes* v. *Sanders,* 93 U. S. 55, 23 L. Ed. 798, 10 Morr. Min. Rep. 445; *Hayward* v. *Elliott Nat. Bank,* 96 U. S. 611, 24 L. Ed. 855; *McLean* v. *Clapp,* 141 U. S. 429, 12 Sup. Ct. 27, 35 L. Ed. 804; 14 Ency. of Law, 162, 163; *Farmers' Bank* v. *Groves,* 12 How. 51, 13 L. Ed. 889; *Daly* v. *Bernstein,* 6 N. M. 380, 28 Pac. 764; 24 Ency. of Law, 622.

CAMPBELL, J.—In August, 1906, J. C. Britt and A. T. Hammons, both of Globe, Arizona, were the owners of a group of mining claims which had been located by them in that year. They also were the owners of an optional contract for the purchase of another group of claims, and Britt alone was the owner of an optional contract for the purchase of still another group. All of these mining claims were in Gila county, Arizona. About the 1st of August, Britt went to New York City for the purpose of disposing of these claims and options. He took with him letters of introduction to Mr. George Mitchell, the president and general manager of the Mitchell Mining Company, which he presented to Mr. Mitchell. Britt held a power of attorney which authorized him to act for Mr. Hammons in disposing of these claims. In presenting the properties to Mitchell, Britt represented: That in one of the groups of mines there were already blocked out from seventy thousand to one hundred thousand tons of copper ore, ready for treatment and reduction by smelting, which would run not less than six per cent copper; that the ore body had an average width of from twelve to twenty-five feet; and that it was developed not less than four hundred feet in depth. With reference to another group of the mines, he represented that there was a large ore body of high-grade ore from which there could be taken daily, for six months, from thirty to thirty-five tons of ore, averaging fifteen per cent in copper. He further represented that, by the expen... .e of about $5,000 in the construction of a road and other improvements upon these claims, sufficient ore could be produced to keep a smelter of from two hundred and fifty to three hundred tons capacity continuously running. The negotiations resulted in the cor-

poration purchasing the mines and optional contracts, giving as consideration therefor twenty thousand shares of the corporation's capital stock. Britt was employed by the corporation to superintend the further development of the mines, and to erect a smelter, and at once entered upon the performance of his duties. It appears that, while the corporation signified its intention of purchasing the properties in August or September, the titles did not pass until November. The shares of stock given as consideration were issued November 28, 1906, and were delivered to Britt's representative, in New York, on November 29th or 30th. Soon after negotiations began, the corporation sent two competent mining engineers to examine and report upon the mines, for the purpose of verifying the representations of Britt. Britt continued to perform the duties assigned to him until March, 1907, having in the meantime completed the erection of the smelter, when Mitchell, having heard unfavorable reports of the mines, personally visited the properties and discovered that the representations made by Britt were false. He informed Hammons of the false representations made by Britt, tendered him a reconveyance of his interest in the mines, and demanded the return of so much of the capital stock as he had received as the result of the sale. This action was brought against Britt and Hammons to secure a rescission of the contract and the cancellation of the certificates of stock, and against A. G. Smith and the Globe National Bank to restrain the transfer of certain of the shares of stock which had been hypothecated to them to secure loans. The action was dismissed as to Smith and the Globe National Bank. Britt was not served with process, and only the action against Hammons was tried. From a decree in favor of the defendant Hammons, this appeal was brought.

Under the testimony in the case, the making of the representations and their falsity was not controverted, and therefore the only question presented by the appeal is whether the case made by the plaintiff will warrant a decree in its favor.

It appears from the testimony that Mr. Mitchell has been the president and general manager of the appellant for a number of years, and as such engaged in buying and selling of mines in the western part of the United States and Mexico. It had been his general custom, when a property was presented to him, to have one or more of the expert mining engineers and

geologists employed by the corporation make careful examination of the property and to report thereon before a purchase was consummated. In this case he followed his usual custom and dispatched two such experts, Mr. George L. Fisher and Prof. Robert T. Hill, in the latter part of August, to make separate and independent examinations and reports, and such examinations were made prior to the middle of September. While Mr. Mitchell testified that he relied entirely upon the representations made by Britt, and that the deal was closed and the consideration paid before the examinations were made, it is quite apparent from the entire testimony that he is mistaken. He testified that the negotiations were completed in August, and "at the conclusion of such negotiations I, on behalf of the Mitchell Mining Company, caused to be transferred and delivered to said Britt, for himself and as agent and attorney for said Hammons, twenty thousand shares of the capital stock of the Mitchell Mining Company." He further testified: "I cannot say exactly when Professor Hill and Fisher examined the mines, but their reports will show. I think it must have been the latter part of August or first of September." And again, upon cross-examination: "These examinations were made at the request of the Mitchell Mining Company, the latter part of August or the first part of September, and after I had closed the deal." It is shown by other witnesses that the examinations were made not later than September, and it is conclusively shown by the certificates of stock that they were issued on November 28th, and by testimony given in behalf of appellant that they were delivered to Britt's representative on November 29th or 30th. The evidence produced by the appellant, concerning the examinations made by the mining engineers and their reports thereon, is far from satisfactory. The reports were not produced at the trial. Their nature is not disclosed by the testimony, nor does it appear when they were received by the corporation in New York. All of these facts were in the possession of appellant and could easily have been shown at the trial. From the testimony it is highly improbable that the reports were not submitted to the corporation prior to November 29th, when the deal was finally consummated by the payment of the consideration. Under such a state of facts, is the appellant entitled to the relief sought?

Counsel for appellant rely upon the case of *Smith* v. *Richards*, 13 Pet. 26, 10 L. Ed. 42, claiming it to be very similar in its facts to this; but there is this difference: In the case relied upon, the vendee put forth nò effort to make, or have made, any examination of the property. Neither he nor anyone for him saw the property prior to the full execution of the contract. In the case at bar, the vendee at once caused the properties to be examined by skilled mining engineers, and, as a precaution, caused them to make separate and independent investigations. It is not claimed that anyone prevented them making as thorough examinations as they desired. Mr. Pomeroy, in his work on Equity Jurisprudence, states that a party is not justified in relying upon representations: "(1) When, before entering into the contract or other transaction, he actually resorts to the proper means of ascertaining the truth and verifying the statement. (2) When, having the opportunity of making such examination, he is charged with the knowledge which he necessarily would have obtained if he had prosecuted it with diligence. (3) When the representation is concerning generalities equally within the knowledge or the means of acquiring knowledge, possessed by both parties." 2 Pomeroy's Equity Jurisprudence, sec. 892. In *Southern Development Co.* v. *Silva*, 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 678, it is said: "Where the purchaser undertakes to make investigations of his own, and the vendor does nothing to prevent his investigation from being as full as he chooses to make it, the purchaser cannot afterward allege that the vendor made misrepresentations." See, also, *Farnsworth* v. *Duffner*, 142 U. S. 43, 12 Sup. Ct. 164, 35 L. Ed. 931; *Clarke* v. *Reeder*, 158 U. S. 505, 15 Sup. Ct. 849, 39 L. Ed. 1070; *Shappirio* v. *Goldberg*, 192 U. S. 232, 24 Sup. Ct. 259, 48 L. Ed. 419.

If it be conceded that, as claimed by counsel for appellant, the inference to be drawn from Mr. Mitchell's testimony is that the transaction was actually concluded and the stock issued to Britt before the reports of the mining engineers, sent by appellant to investigate the mines, were actually received by it, and that appellant relied wholly upon Britt's representations, we do not see that their case is materially strengthened. At least three months elapsed between the time the mining engineers began their investigations and the delivery of the

shares of capital stock. The agents sent to investigate were competent men, and certainly they had an abundance of time and opportunity in which to ascertain the truth or falsity of the representations made by Britt and to communicate the facts to their employer. Having undertaken to investigate for itself, and having actually investigated, with every opportunity speedily and accurately to ascertain the facts, appellant may not now be heard to say that it acquired no knowledge from such investigation. It is chargeable, at least, with the knowledge which it could have readily acquired. As said by Mr. Justice Field, in *Slaughter's Admr.* v. *Gerson*, 13 Wall. 379, 20 L. Ed. 627: "Where the means of information are at hand and equally open to both parties, and no concealment is made or attempted, the language of the cases is that the misrepresentation furnishes no ground for a court of equity to refuse to enforce the contract of the parties. The neglect of the purchaser to avail himself, in all such cases, of the means of information, whether attributable to his indolence or credulity, takes from him all just claim for relief."

The decree of the district court is affirmed.

KENT, C. J., and SLOAN and DOAN, JJ., concur.