## JAMES & CO. v. BOCAGE & CO.

1. SALES: *Warranty: Fraud.*

A purchaser takes the risk of the quality of a chattel sold to him unless there be fraud or warranty in the sale; for while there is an implied warranty of title, there is none of quality. Mere representation is not warranty.

2. SAME: *Same: New Contract.*

When a party orders a machine, provided it be in a certain specified condition, and it is shipped to him, and upon examination and trial is found not to be in the condition specified, he may refuse payment and hold the machine until the freight paid by him is refunded; but if, instead, he complains of the defects and offers to retain the machine at a reduced price, and the offer is accepted, he is bound by the new contract and can not set up against it the seller's previous representations of the quality and condition of the machine.

APPEAL from *Jefferson* Circuit Court.

Hon. J. A. WILLIAMS, Circuit Judge.

*J. M. & J. G. Taylor*, for Appellant.

The demand and allowance of the rebate, and the giving of the note, was a novation of all previous contracts. There was no express warranty.

Bocage & Co. not only knew of the defects in the machine before they purchased it, but wrote plaintiffs at length, setting forth the defects, as appears from their letter to plaintiffs of May 17, 1883.

James & Co. v. Bocage & Co.

The facts are so plain there is no reasonable defense to the suit, the greatest difficulty being to account for the unheard-of judgment of the circuit court.

No principle is better settled than in sales of personal property in the absence of express warranty, when the buyer has an opportunity to inspect the commodity, and the seller is guilty of no fraud, and is not the manufacturer of the article he sells, the maxim of *caveat emptor* applies. Such a rule is necessary to the wants of trade and can only be obviated by the purchaser requiring an express warranty and afterwards relying upon it. If he is satisfied without a warranty and can inspect the article offered for sale, and declines to do it, he takes upon himself the risk that the article is merchantable. If an examination is practicable it must be had, no matter how inconvenient, and the rule applies. *Barnard v. Kellogg, 10 Wallace, 388; Thornton v. Wynn, 12 Wharton, 183.*

The defendants had no right to rely upon statements of the plaintiffs in regard to the machine made prior to and as inducement to the contract, as warranties. "An antecedent representation made by the vendor as an inducement to the buyer, but not forming a part of the contract when concluded, is not a warranty." *Benjamin on Sales, Secs. 610, 613, notes K and L; Berman v. Wood, 38 Ark., 351.*

The defendants by examining, setting up and working the machine, they being experienced in such matters, brought themselves within the rule as laid down by this court in *Hanger, et al., v Evans & Shinn, 38 Ark., 344.*

The declarations of law offered by plaintiffs set forth the law as settled by this court, and the refusal to give the first thereof and finding by the court contrary to those given, was error.

The plaintiff was entitled to judgment for the amount of the note sued for. Further argument or authorities seem to us

a needless undertaking.   We submit that judgment should be entered here for amount asked by plaintiffs without any conditions whatever.

*Bell & Elliott*, for Appellees.

If there was a warranty of quality, a return or offer to return was not necessary to enable defendants to defend on account of defect of quality in the machine.   *22 Ark., 454.*

The finding of the court on the facts is not subject to review here, if there is evidence to support it.   *27 Ark., 592; 25 Id., 562; 33 Id., 97; 36 Id., 260.*   The assignment that the judgment is contrary to law is too general.   *44 Id., 213.*

The court found that appellants' representations were *false*, and the finding of a court will not be disturbed any more than the verdict of a jury.   The judgment, while it may not be formal, is *for the defendants*, and may be amended *nunc pro tunc*.   Upon the whole case the judgment is right and should be affirmed.   *34 Ark., 93.*

SMITH, J.   The appellants, plaintiffs below, were dealers in second-hand machinery in Chicago, Illinois; Bocage & Co. were practical machinists at Pine Bluff.   In the month of March, 1883, a correspondence took place between the parties in regard to a compound shaper, a machine used in planing brass.   The price of such a tool, when new, is $400 or $500. But the plaintiffs stated that they had one in stock, which had been recently overhauled, was in good condition and almost as good as new, for which they would take $250.   A minute description and a photograph of the planer were enclosed.   In April another photograph of the machine was sent and the plaintiff stated that it was in good working order, with the exception of certain specified defects, and it was suggested that

James & Co. v. Bocage & Co.

the defendants delegate some person in Chicago to examine it. In reply the defendants say, in substance: "If your machine is in No. 1 order, no lost motion in any of its working parts from wear, and is clean and bright, you may ship it to us and we will pay $100 in cash and give our note for $150, payable September 1, 1883." The machine was accordingly shipped and the defendants notified by letter, in which a note was enclosed for their signature, "after they had examined the tool."

The defendants received the tool and paid freight, amounting to some $42.05, and after setting it up and working it, expressed dissatisfaction and wrote to the plaintiffs to know what they should do. Upon receipt of this, the plaintiffs directed them to send the machine back to Chicago and collect the freight charges of the railroad; the custom in such cases being, as the plaintiffs testify, for the railroads to advance the charges and hold the property for repayment. This the defendants declined to do, but proposed to keep the machine if the plaintiffs would deduct out of the cash payment the aforesaid sum of $42.05, freight, which the defendants had expended. This proposition was accepted; and the defendants, after having had the machine in their possession for more than a month, remitted $57.95, and made the note for $150, upon which they are now sued. The note matured in September and was allowed to go to protest. The plaintiffs wrote a sharp remonstrance, threatening an action. The defendants excused themselves on account of financial depression in the country, the result of short crops; complained that the machine had not answered their expectations; but added, "That does not figure in the debt; we owe it and will pay."

However, they did not pay; and when sued set up by way of defense fraudulent representations by the plaintiffs in regard to the condition of the machine when sold, breach of warranty and damages in consequence.

James &·Co. v. Bocage & Co.

The cause was tried without the intervention of a jury and the circuit court found the facts to be that the defendants purchased the property under false representations as to its character, and have sustained damages by reason of said purchase to the extent of $100, and are entitled to have the same repaid before returning the machine. Upon this finding judgment was entered·that the defendants return to the plaintiffs the said shaper upon the payment, by plaintiffs, of the sum of $100, expended by the defendants.

1. SALES:— Warranty: Fraud: Representation.

This is a singular result. Without stopping to criticise the form of the judgment, there is nothing in the testimony to support the finding of the court. A purchaser takes the risk of the quality of an article sold unless there be fraud or warranty. Now, here was certainly no express warranty. And in a sale of chattels, while there is an implied warranty of title, there is none of quality. Mere representation is not warranty, the relation of buyer and seller not being a confidential one. Hence all that was said in the earlier part of the correspondence about the machine being nearly as good as new, and about its being in good working order, was but the ordinary language of puffing and commendation—a mere expression of opinion not calculated to deceive any man of common prudence. *Whitaker v. Eastwick, 75 Pa. St., 229; Berman v. Woods, 38 Ark., 351; Hanger v. Evins, Ib., 334.*

2. SAME:— New contract.

When the defendants had received the machine, had set it up and put it into operation, and were disappointed in its workings, they might well have declined to take it upon the terms proposed and might have held possession of it until they were reimbursed for the charges they had advanced. For they only ordered its shipment in case it was in a certain condition. But after they had examined it and discovered its defects, or some of them, they offered to pay a reduced price and their offer was accepted. The antecedent representations made by the sellers as an inducement to the purchase, but forming no part of the

James & Co. v. Bocage & Co.

contract as concluded, were not in the nature of warranties. *Benjamin on Sales, 4 Am. Ed., Sec. 610.* The means of knowledge were equally available to both parties, or if there was a difference in this respect, it was in favor of the defendants. For Bocage, the manager of the firm, testified that he was a machinist of forty years' experience—that he knew all about machinery and could build an engine complete. The subject of purchase was open to inspection; and if the defendants did not avail themselves of their opportunities, and did not, in point of fact, ascertain that the machine was incurably defective until October, 1883, they cannot be heard to say, in impeachment of the contract of sale, that they were deceived by the plaintiffs' misrepresentations. *Slaughter's Adm'r v. Gerson, 13 Wall., 379.*

The plaintiffs were guilty of no fraud; they were not the manufacturers of the machine; the buyers had ample opportunities of inspection, and exacted no express warranty. The maxim *caveat emptor* applies and the defendants are liable for that part of the price remaining unpaid, notwithstanding the machine may have turned out to be totally worthless and fit only to go into the furnace as scrap iron. *Barnard v. Kellogg, 10 Wall., 383.* And all of the evidence, going to show defects in the planer, was inadmissible; for these the defendants knew, at the time of purchase, or, what amounts to the same thing, had the means of knowledge. All that occurred, to the final consummation of the trade, may be safely left out of view. But we have looked carefully through the entire correspondence, the negotiations having been by letters, all of which are set out, and the parties never having met in person; so that we are enabled to see the whole transaction as it transpired.

The findings and judgment should have been for the plaintiffs. And because they were not, the judgment is reversed, and a new trial awarded.