EARL *v.* WESTFALL COMMISSION COMPANY.

Opinion delivered January 4, 1902.

1. SALE—WARRANTY.—Where a purchaser ordered a car load of cabbages, and on its arrival inspected it, and refused to accept it on account of its damaged condition, and subsequently accepted it at a reduced price, there being no express warranty, the cabbages were sold at the purchaser's risk, and he cannot hold the seller responsible if the damage proved to be greater than estimated. (Page 64.)

2. UNLAWFUL CHARGE BY CARRIER—REIMBURSEMENT.—Where plaintiff ordered a car of cabbages to be shipped without ice, and the car was iced by the carrier in transit, plaintiff is not entitled to recover from the seller the charges therefor paid by him to the carrier. (Page 65.)

Appeal from Sebastian Circuit Court, Fort Smith District.

STYLES T. ROWE, Judge.

Reversed.

*Ira D. Oglesby,* for appellants.

BATTLE, J. On the 5th of October, 1896, Westfall Commission Company commenced an action against Earl Brothers, before a justice of the peace, upon the following claim:

"Earl Brothers bought of Westfall Commission Company car cabbage. Ordered ventilated car, no ice. Received in ice car, rotten condition, damaged. Ordered Holland, received Flat Dutch, 10 ton.

Difference in variety, $2.00 a ton......................$20.00
Ordered without ice, came iced, charges................ 21.75

                                                        —————
                                                        $83.00
        Credit by rebate................................ 15.00

                                                        —————
        Balance ...................................$68.00"

And it recovered judgment, and the defendants appealed to the circuit court.

The undisputed facts, as shown by the evidence adduced in the trial had in the circuit court, in the language of appellant's brief, are as follows:

"The Westfall Commission Company, through Blakemore, a broker, ordered a car load of cabbage from appellants as per following telegram: 'Ship Westfall ten tons Holland seed cabbage, well trimmed, ventilated fruit car; not iced.' Upon the arrival of the cabbage at Fort Smith, September 29th, Westfall, of the firm of Westfall Commission Company, went into the car, examined the cabbage, and ascertained the kind and condition of same, and that the cabbages were heated and partly rotted, and that all were not Holland seed, but part Holland and another variety. He at once wrote appellants that cabbage had just arrived; that, instead of it being fresh Holland cabbage, found the back ends in both compartments loaded with good fresh goods, and at the doors of both compartments found that the cabbage was 'old stock and not Holland,' and further complained that the cabbage was not shipped in ventilated fruit car without ice as ordered. He then (and it seems after writing this letter, as he makes no allusion to having wired) telegraphed Earl Brothers as follows: 'Cabbage just arrived, heated and rotted. Can't pay draft unless protected, wire instructions.' Thereupon Earl Brothers wired Blakemore, the broker: 'Examine Westfall car cabbage. They wired heated and rotted. Report quick.' On the receipt of this telegram, which Blakemore showed Westfall, they went together to examine the cabbage (this being Westfall's second examination), opened the car, went in, and examined same as fully as they desired. At this time Westfall called the attention of Blakemore to the fact that it was a car of mixed cabbage, and badly heated and rotted. Westfall examined same as thoroughly as he wished, and admits that he had the opportunity and privilege of examining same all day, had he desired

to do so, before accepting same. He then proposed to take the cabbage if deduction of $25 was made, and had Blakemore wire, 'Cabbage arrived in very bad condition; not ventilated car as ordered. Westfall will accept $25 rebate.' In answer to this Earl Brothers wired: "This your order: bank deduct $15 Westfall draft. Answer.' This order was reported to and accepted by Westfall, who saw all the telegrams, and the trade was then closed, whereupon Blakemore wired Earl Brothers: 'Westfall accepts reduction. Will write fully by mail.' Westfall then paid draft, accepted the car of cabbages, and removed them to his place of business and sold them out in the ordinary course of trade. All this occurred on September 29th, and on the next day Westfall wrote appellants, as follows: 'Your broker ordered for me a car of Holland seed cabbage. At the same time I could have bought at 50 cents a ton less, but I knew you meant to do right, and would see I got a square deal, so preferred to deal with you. Well, the car arrived yesterday. There is not one thousand pounds Holland seed in the car, and the balance is large Drum Head, and so badly rotted that we leave over one-fourth in the car. I called for a rebate, and got $15. I paid draft less $15, and thought I could get out, but since I got into the car I feel sure I will never get freight out of the whole car. If you can spare the time, please look at the wire ordering the car. It reads, 'Ship in ventilated fruit car, no ice.' Instead it came in an old-fashioned center-iced refrigerator, right against instructions. I know your business is so great you cannot attend to details; but, if you will trace this matter up for a friend and brother, you will find wherein I have been wronged and made a victim of misplaced confidence. Fifty or sixty dollars is not much to you, scarcely worth your time in reading this; but it is big money to me at present, after my potato disaster last season. I should have refused the car flatly, but thought I might work out even, and protect a friend; but my intentions got me left. We received wire stating, was shipped the 24th. The bill reads 26th, showing it stayed on track two days before being moved, making it six days in the sweat box. If you think me worthy of reply, I should be pleased to hear from you.' The shipment was made with bill of lading attached, being consigned to shipper's order.

"Plaintiff Westfall further claimed that he could not have ascertained the true condition of the cabbage without unloading, but admitted that he went to the center of the car, and could have

thrown back as much of the cabbage, and could have gone as deep into the car, as he wished, and that there was nothing to prevent him from examining them all day if he wished. He also testified, over objections of defendants, that he told Blakemore 'that if the car run all through as that indicated on top, $15 or $25 would cover it.'

"The testimony in regard to icing the car is as follows: 'Westfall admitted that he could have ascertained, when he first examined the car, if it was iced, and could have found out all about it. Blakemore also testified that it was a car which used ice, and that plaintiff could easily have told if it was iced when he first examined it. But plaintiff admits that he did know the car was iced before he unloaded it, and before he paid the freight and charges for icing to the railroad company. The charge for freight and icing were charges made by the railroad company; were not paid to appellants, who knew nothing of it, and were in no way connected with it.

"The testimony on behalf of the appellants in regard to icing the car, and which is not contradicted, was: That, if the car was iced, it was done by the railroad company, without their orders. William Jaeger, who loaded the car, testified it was loaded without ice, and no instructions given to ice it. If the railroad company iced the car, it was without the knowledge or authority of Earl Brothers. Charles J. Pettybone, who superintended the loading and shipping of the car, testified that there was no ice in the car when it left South Evanston, where loaded, and from which shipment was made, and further testified that he gave instructions to have car forwarded without ice, and, if it was iced, it was done without instructions from or authority of Earl Brothers, or anyone connected with them. None of this testimony is disputed or contradicted."

The plaintiff recovered a judgment for $36.75; and the defendants appealed.

Was plaintiff entitled to recover any sum?

When Westfall Commission Company refused to accept the car load of cabbages upon their arrival at Fort Smith, the cabbages were in the condition they would have been had they never been sold, and were subject to resale. Westfall Commission Company repurchased them, agreeing to pay therefor fifteen dollars less than it first stipulated to pay. Earl Brothers made no warranty. Westfall Commission Company, upon its examination and judg-

ment, purchased. There was no fraud in the last sale. It purchased at its own risk, and must suffer the consequences, without recourse on account of the quality and damaged condition of the cabbages. *Barnard* v. *Kellogg,* 10 Wall. 383; *James* v. *Bocage,* 45 Ark. 284; 2 Mechem on Sales, §§ 1311, 1312, and cases cited.

As to the item of the account for icing, Earl Brothers were not liable. The evidence showed that when the car was loaded with the cabbages it was not iced; that when it left the place of shipment it was not iced; that instructions were given for it not to be iced, and, if iced, it was done by the railroad company in transit, without the knowledge or authority of Earl Brothers. The Commission Company knew that it was ordered to be shipped without ice, and paid the railroad company's charges for the same when no one was in duty bound to do so, and are not entitled to reimbursement on that account.

The judgment of the circuit court is therefore reversed; and, it appearing that appellee has collected, on the judgment recovered against the appellant in the justice's court, out of the funds paid by the garnishees in this action in court, the sum of $68, judgment is rendered here in favor of the appellants against the appellee for the sum of $68 and 6 per cent. per annum interest thereon from the 18th of January, 1897, the date of payment.

RIDDICK, J., absent.