SAUERMAN *v.* SIMMONS.

Opinion delivered March 25, 1905.

INSTRUCTION—ASSUMING DISPUTED FACT.—Where it is a question whether a representation in the sale of a chattel was an affirmation of a material fact, and intended by the vendor as and for a warranty, or was a mere commendation, and expressed the vendor's opinion, belief, judgment or estimate, it was error for the court in the instructions to treat the representation as a warranty.

Appeal from Pope Circuit Court.

WILLIAM L. MOOSE, Judge.

Reversed.

### STATEMENT BY THE COURT.

Appellee brought suit before a justice of the peace in Pope County, alleging in his complaint that he purchased a pump and fixtures from appellants, and paid therefor $35 in cash, upon the representation of appellants that it would lift water thirty-three feet on a straight lift; that it would not work as represented, and by reason thereof he had been damaged in the sum of $35 paid for the pump, and in loss of labor of men and teams and other items; and praying judgment for $97.14 and costs.

Appellants answered, admitting the sale of the pump for the price named, but denying that they had represented that it would lift water thirty-three feet in a straight lift, or made any false representations in regard to same, or that appellee had been damaged by reason of the failure of the pump to do the work it was by them recommended to do, either in the sum alleged or any other sum. They further allege that the pump was purchased and paid for after a full inspection by appellee, and without any fraud, warranty or false representation on the part of the appellants.

There was judgment for appellants in the justice's court, from which appellee appealed to the Pope Circuit Court. There judgment was for appellee, and this appeal was taken.

On the trial in circuit court the following facts were testified to, and there is but little variance and no material conflict in the evidence. Briefly stated, the facts are that the appellee went to the shop of the appellants to buy a mine pump; was told they had none; stated that the shaft of his mine was twenty-six feet deep, and he had been getting the water out of his mine with an inch and a half steam jet, and took about an hour and a half to get it out; was told that a steam jet was his cheapest way to get it out, but complained that it took too long; was then told by Sauerman that they had a second-hand double-action pump which had been used against eighty pounds steam pressure, filling boilers, that would throw the water out of his mine in about half the time. He wanted to see it. It was shown him, and he was told the price was $35. Sauerman says appellee seemed anxious to get it, but he told appellee he would not let it go until he tried it to see if it worked all right. Sauerman then, with the assistance of Frank Davenport, connected the pump with their steam boiler, and with water in a tub kept for that purpose, tried the pump, the water in the tub being about three feet from the pump, and it worked well. Appellee says that Sauerman told him the pump would lift the water out of his mine, and would lift water thirty-three feet, and on this representation he bought the pump, paid for it, took it to his mine, tried to get the water out of his mine, but it would not work. Appellant Sauerman was asked by appellee, while they were trying and examining the pump before the purchase, "how far a pump would lift water," and he told appellee that thirty-three feet was the limit for raising water where the resistance depended on atmospheric pressure, but did not tell him that this pump would 'raise water thirty-three feet. He did not tell appellee "that the pump would lift water out of his mine when placed at the top of the shaft, or at any other place, but down at the sump at bottom of shaft." Appellant Sauerman also testified that the pump was opened up, and the manner of its working explained to appellee. It was explained to appellee that if the pump was properly connected "at the sump," it would throw the water after it passed the plunger a distance of 100 feet. Appellee, after examining the pump, said he was not a machinist, but had considerable experience with machinery and

pumps, and was "easy to catch on to any machinery, and could manage it." Sauerman said that appellee said "he wanted the pump down close to the water, would need about three feet of suction or receiving pipe, and they gave him that amount with the proper fittings," etc.

Appellee testified that he "set the pump at the top of his shaft at first, the water being about ten feet deep in the shaft, and, finding it would not work there, he put it on the caging used in the shaft, down near the water, and it would work for a while, then would have to be let down near the water, and to make it work would have to work a lever used for starting it, and, finding it would not work all right, he wrote to appellants to know what they were going to do about it. The correspondence between appellants and appellee concerning the alleged failure of the pump to lift the water as represented was introduced. Witnesses corroborated appellee as to the failure of the pump to take the water out of the shaft, and as to the efforts of appellee to make it work.

There was testimony also tending to support the testimony of appellant Sauerman that the pump was in good condition; that it worked all right forcing water into boilers against over eighty pounds steam pressure. Witness Davenport, on behalf of appellant, testified: After appellee complained about the pump not working, he was sent to the mine to see what the trouble was, and put the pump in working condition, if anything was wrong with it. Found it outside of shaft, and connected it up with steam boiler to see if it worked all right at steam end; found it in good working order, but could not pull water out of shaft, as it was not that kind of pump. Wanted to put it on caging, and let it down to the water in shaft, but appellee objected, and said if witness would first pump the water out of shaft with that pump, he could put it where he pleased. Knowing that could not be done, the pump not being intended to work that way, he returned to Russellville.

The court instructed the jury as follows:

"This is a suit to recover the price of a pump sold by the defendants to the plaintiff. The pump was sold for $35. The plaintiff returned the pump, and undertook to rescind the sale,

and brings this suit to recover the price he paid for it. The plaintiff contends that the defendants warranted or represented that the pump was suitable for pumping water from plaintiff's coal mine. The defendants admit that they made the warranty upon condition that the pump was placed down in the mine near the water. The plaintiff asserts that it was understood that the pump was to be placed at the top of the shaft. Both parties now say that the pump will not raise water from the mine unless it is placed within about three feet of water, and plaintiff states that it will not do the work under any conditions.

"The principal question for you to consider is as to whether the defendants represented or warranted that the pump would do the work if placed at the top of the shaft, or whether his warranty was made on condition that the pump was to be placed near the water. If it was understood that the pump should remain on top of the ground, and you find that, so placed, it would not lift the water, the plaintiff is entitled to recover the the price of the pump. If it was supposed at the time of sale that the pump should be placed in the mine near the water, and you find, so placed, the pump would properly lift the water, the verdict should be for the defendants.

"The representations that were made at the time of the sale are to govern you; and any subsequent statements made in person or by letter are to be considered by you only as they may indicate what the original contract was. You are the judges of the weight and sufficiency of the evidence and of the credibility of the witnesses. Where the testimony is conflicting, it is your duty to reconcile it so, if possible, to give effect to the statements of each witness. If you believe any witness has willfully sworn falsely to any material fact, you may disregard the entire testimony of such witness, and give effect to the statements of such witnesses as you believe have told the truth. The burden of proof is on the plaintiff. He must make out his case by a preponderance of the testimony. A bare preponderance, however, is all that is required. If you find for the plaintiff, your verdict should be for $35. If you find for the defendants, you will simply say so by your verdict."

To the giving of that part of the instruction which says that "the defendants admit that they made the warranty upon

condition that the pump was placed down in the mine near the water" the appellants objected and excepted. The jury returned a verdict for appellee for $35. Judgment was entered accordingly, and this appeal taken.

*Dan B. Granger*, for appellants.

It was the duty of the court to give correct instructions to the jury, whether specially requested or not. There was no question of warranty of title in the case nor of implied warranty of condition, quality or fitness of the pump, it being a sale of a second-hand article, already existing and not manufactured by appellants, and which had already been inspected by the buyer. 50 Ind. 10; 10 Wall. 363; Benj. Sales (6th Am. Ed.), § 966; 2 Rice, Ev. 1313; 29 W. Va. 244; 77 Ga. 701. The existence of an express warranty, and whether or not it controlled the sale, are questions for the jury. 2 Benj. Sales, 813. Erroneous instructions presumed to have prejudiced. 16 Ark. 309; 18 Ark. 384. The sixth ground in the motion for new trial should not have been overruled. 2 Benj. Sales, 813, note 7, 8; 14 Ark. 530; 20 Ark. 172. An antecedent representation made by a vendor, but not as part of the terms of the sale, does not constitute a warranty. 2 Benj. Sales, 808; 11 Pick. 97, 99; 10 Am. & Eng. Enc. Law, § § 131, 132. The representations must have been fraudulent, made with knowledge of their falsity, and have controlled the vendee. 60 Ark. 387, 389. When a guaranty is conditioned upon certain tests, these must be made by the vendee before he may rescind. 66 Wis. 218. When a party refuses to allow exact performance of such a warranty, he waives it. 21 Am. & Eng. Enc. Law, 651, 652; 2 Benj. Sales, 742.

WOOD, J., (after stating the facts.) There was no demurrer to the complaint. There was no allegation that the representations were warranties; but the parties treated the complaint as stating a cause of action upon a warranty, and tried the case upon that theory, and we will so consider it here. Appellants denied that any false representations were made, and denied that the representations constituted a warranty. There was proof tending to show that appellants refused to sell until

appellee had fully inspected the pump, and had made a test of the pump's power to throw water at the tub. There was proof tending to show that the representation that the pump would do the work for appellee was coupled with the condition that it was placed at the "sump" and properly connected, and that appellants did not represent that *this pump* would lift water thirty-three feet, but that thirty-three feet was the limit for raising water where the resistance depended on atmospheric pressure. The evidence tended to show that these statements were made before and during an inspection of the pump by appellee. The court, in the part of the instruction objected to, and other portions, treats the representations as a warranty. We think, under the evidence and pleadings, the court should have submitted to the jury the question whether the representations were warranties. The law is well settled that any "affirmation of a material fact, as a fact, intended by the vendor as and for a warranty, and relied upon as such, is sufficient; but mere representations by way of commendation or which merely express the vendor's opinion, belief, judgment or estimate, do not constitute a warranty." *Simplex commendatio non obligat.*

Whether a particular representation is an affirmance of a positive fact, or, on the other hand, only praise and commendation, is a question for the jury, where the meaning is ambiguous, and the intention of the parties may be gathered from surrounding circumstances." 2 Benj. on Sales, American Notes, p. 664, and authorities cited; *James* v. *Bocage,* 45 Ark. 284. For the error indicated the judgment is reversed, and the cause is remanded for new trial.