W. & S. JOB & CO., Inc., v. HEIDRITTER LUMBER CO.

(Circuit Court of Appeals, Second Circuit. November 13, 1918.)

No. 32.

1. SHIPPING ⇐⇒27—CONTRACT FOR SALE OF VESSEL—WARRANTY.
    A statement by the seller of a vessel, after the contract of sale had been made and part of the consideration paid, that she was sound and seaworthy, did not constitute an expressed warranty.

2. BROKERS ⇐⇒95—IMPLIED AUTHORITY—WARRANTY ON SALE OF VESSEL.
    An independent shipbroker has no implied authority to give an express warranty on sale of a vessel for his principal.

3. SHIPPING ⇐⇒27—CONTRACT FOR SALE OF VESSEL—IMPLIED WARRANTY—RULE OF CAVEAT EMPTOR.
    The rule of caveat emptor applies to the sale of a vessel, in the absence of an express warranty, and where a purchaser acted upon the report of a surveyor employed by it, and did not demand an express warranty, there was no warranty by implication.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by W. & S. Job & Co., Incorporated, against the Heidritter Lumber Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Robert B. Honeyman, of New York City, for plaintiff in error.

Harrington, Bigham & Englar, of New York City, for defendant in error.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The defendant in error, owner of the Florence M. Belding, sold her to the plaintiff in error on March 4, 1916. The latter now sues, claiming the schooner was not sound or seaworthy or in good condition when sold, and seeks to recover $7,600, the difference between the purchase price and the price at which the plaintiff in error sold the boat subsequently, plus 5 per cent. brokerage commissions, because, as it says, the schooner was not as warranted.

At the trial, both parties moved for judgment after the proof was submitted. The District Judge, however, submitted specific questions to the jury, for it to determine the seaworthiness of the vessel, and this without objection from either litigant. The jury found the vessel seaworthy and fitted for a voyage upon the Atlantic at the time the agreement of sale was made. The court thereafter in a written opinion approved the verdict and gave judgment for the defendant in error. This finding of fact, both of the jury and the District Judge, is binding upon us, unless error was committed during the trial.

Mr. Job, called by the plaintiff in error, was cross-examined as to whether or not he heard that the Florence M. Belding made a trip from Nova Scotia across the Atlantic, and this after trifling repairs were made. This testimony was duly objected to, but admitted, and exception taken to its admission. This error would require a reversal, for such evidence was hearsay and harmful, and might well influence the jury, if there was an expressed or implied warranty in the contract of sale. Was there an expressed or implied warranty? We think not.

[1] One Stoddard, a shipbroker, was informed that the defendant had this vessel for sale, and approached the plaintiff and offered her for sale, which negotiations resulted in the following correspondence:

"March 4, 1916.

"Mr. R. F. Clark, Agent, New York—Dear Sir: We understand from your agent, Mr. Stoddard, that you sell us the Florence M. Belding for the sum of $38,000, and beg to inclose herewith check for $5,000 on account of same.

"We shall take delivery of the ship as soon as you can supply us with the bill of sale. Kindly acknowledge receipt of check and oblige.

"Yours truly,                                    W. & S. Job & Co., Inc."

"Elizabeth, N. J., March 4, 1916.

"Messrs. Job & Company, No. 29 Broadway, New York City—Gentlemen: We beg to acknowledge receipt of your check for five thousand ($5,000) dollars, account of purchase price for schooner Florence M. Belding, as per your letter of the 4th inst.

"Yours very truly,                    The Heidritter Lumber Company,
                                                    "By F. R. Clarke."

Thereafter, and on March 13th, Mr. Wolff, vice president of the defendant in error, delivered a bill of sale for the schooner to Mr. Job, an officer of the plaintiff in error, and received the balance due on the purchase. Job testified as follows:

"Mr. Wolff brought the bill of sale in and asked us for the balance of the money. Mr. Wolff told us he thought we had a bargain in the vessel, and I told him I was very glad to hear that, and he said she had been a very useful vessel to them, and that she was sound and seaworthy in every way. I told him we had only seen the top of the vessel. We had not been able to see her

bottom, because she was full of lumber. We had not been able to see what was inside. Mr. Wolff said she was sound and seaworthy all over."

[2] This was not denied by Mr. Wolff. However, whatever was said by Mr. Wolff on this occasion could not be considered an expressed warranty, for the sale was consummated by the exchange of the above letters, and the parties were obligated to the contract there made. No representations made after that date as to the soundness or seaworthiness of the vessel would constitute an expressed warranty, for there was no new consideration. A contract of warranty requires a consideration. The consideration which supports this contract of sale was determined and agreed upon by the parties on March 4th. Any further or new warranty would require a separate and sufficient consideration. Nor could Mr. Stoddard, an independent broker by anything that he said, commit the defendant to an expressed warranty, for he had no such implied or apparent authority. Smith v. Tracy, 36 N. Y. 79; Crist v. Turner, 175 App. Div. 664, 161 N. Y. Supp. 856.

[3] But the plaintiff in error contends that there was an implied warranty. Although this contention is not pleaded, we will examine it. The plaintiff in error pleads an expressed representation. A surveyor, at the request of the plaintiff in error, examined the vessel and made a formal report of her condition before its purchase. He pronounced her seaworthy, and, although the vessel still had lumber in her hold, ample opportunity was afforded, either for further examination or some insistence upon a warranty. This was not done, and, after the report of the surveyor, the contract of sale was made. The rule of caveat emptor applies to the sale of a vessel under these circumstances and in the absence of an expressed warranty.

In Barnard v. Kellogg, 10 Wall. 383, 19 L. Ed. 987, the court said:

"No principle of the common law has been better established, or more often affirmed, both in this country and in England, than that in sales of personal property, in the absence of express warranty, where the buyer has an opportunity to inspect the commodity, and the seller is guilty of no fraud, and is neither the manufacturer nor grower of the article he sells, the maxim of caveat emptor applies. Such a rule, requiring the purchaser to take care of his own interests, has been found best adapted to the wants of trade in the business transactions of life. And there is no hardship in it, because, if the purchaser distrusts his judgment, he can require of the seller a warranty that the quality or condition of the goods he desires to buy corresponds with the sample exhibited. If he is satisfied without a warranty, and can inspect, and declines to do it, he takes upon himself the risk that the article is merchantable; and he cannot relieve himself and charge the seller, on the ground that the examination will occupy time and is attended with labor and inconvenience. If it is practicable, no matter how inconvenient, the rule applies. One of the main reasons why the rule does not apply in the case of a sale by sample is because there is no opportunity for a personal examination of the bulk of the commodity which the sample is shown to represent. Of such universal acceptance is the doctrine of caveat emptor in this country that the courts of all the states in the Union where the common law prevails, with one exception (South Carolina), sanction it."

In Barr v. Gibson, 3 M. & W. 390, where a ship was sold without an expressed warranty, it was held that there was no implied warranty. There the court said:

"The simple bargain and sale, therefore, of the ship, does not imply any contract that it is then seaworthy or in a serviceable condition."

In Sanford & Brooks Co. v. Columbia Dredging Co., 177 Fed. 882, 101 C. C. A. 96, the court said:

"If the scows had been sold outright on May 23, 1904, after the respondents had full opportunity to discover their condition, it could scarcely be contended that the respondents would not be bound to pay the purchase price agreed upon, whatever defects might have been subsequently discovered therein. The rule of caveat emptor applies to the sales of ships as in the sales of other personal property. 1 Parsons on Admiralty, 86."

Nor is this result changed by reason of chapter 571 of the Laws of 1911 (New York State Personal Property Law). Section 96 thereof provides that, where the buyer expressly or by implication makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

It is doubted whether a boat can be classified within the term "goods" as used in the statute, but here the buyer did not rely on the seller's skill or judgment, but, as above stated, made an independent examination of the boat. We think it was unnecessary for the District Judge to submit the questions to the jury, as there was neither expressed nor implied warranty in this contract of sale. Therefore the error in the admission of testimony was harmless.

The result below is right, and the judgment is affirmed.