**FURNESS, WITHY & CO., Limited, v. SUTH-ERLAND, Alien Property Custodian, et al.**

Court of Appeals of District of Columbia.

Submitted May 7, 1928.  Decided June 4, 1928.

Petition for Rehearing Denied June 25, 1928.

No. 4679.

Shipping ⚖️27—Recovery cannot be had against seller of ship for misrepresentation, where buyer's agent had equal opportunity for investigation before compromise.

Where agent, acting for purchaser in settlement under contract for purchase of ship, had, before compromising dispute over contract price, equal opportunity for investigation as seller, recovery cannot thereafter be had against seller on ground of misrepresentation as to deadweight capacity, on which purchase price was based.

Appeal from the Supreme Court of the District of Columbia.

Suit by Furness, Withy & Co., Limited, against Howard Sutherland, Alien Property Custodian, as trustee of the assets of the American Lumber Company and the Gulf Shipbuilding Company, and another. Decree of dismissal, and plaintiff appeals. Affirmed.

J. A. Kratz, of Washington, D. C., and J. M. Woolsey and C. T. Cowenhoven, Jr., both of New York City, for appellant.

H. J. Jacobi and D. H. Stanley, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice.  This is an appeal from a decree of the lower court, dismissing the plaintiff's bill of complaint after trial.  The record discloses the following controlling facts:

The appellant, Furness, Withy & Co., Limited, plaintiff below, is a British corporation, with its principal office in London, having also an office in New York, and doing business as a steamship owner, steamship agent, and chartering broker.

In January, 1918, the Alien Property Custodian seized the capital stock of the German-American Lumber Company, a Florida corporation, as enemy-owned property, and the Custodian, as sole stockholder, elected a board of directors for the corporation.  William L. Wilson was made its president, and its business was continued under the directions of the Custodian, with its corporate name changed to the American Lumber Company.  In July, 1918, the corporation, while so operating, purchased the entire capital stock of the Gulf Shipbuilding Company, also a Florida corporation, and the officers of the purchasing corporation became also the officers of the Shipbuilding Company.

In September, 1918, the Shipbuilding Company entered into a written contract with a Belgian corporation, known as Société Elizabeth, for the sale by the former company to the latter of a wooden vessel then under construction by the seller at Millville, Fla.  The contract recited that the vessel was estimated at about 2,300 tons dead weight cargo under deck, and the price was to be $147.50 per deadweight ton, to be paid upon terms of $75,000 cash on signing the contract, $60,000 when engines were received, $60,000 when vessel was launched, and balance on delivery of the vessel.  It was stipulated that, if the buyer and the seller should not be able to agree as to the deadweight carrying capacity of the vessel, such capacity should be determined by arbitration, each party to nominate an arbitrator, and they to select an umpire, if necessary, by whom the deadweight capacity of the vessel should be determined.  Pursuant to the terms of the contract the sum of $75,000 was paid at once by the buyer, and afterwards the two sums of $60,000 each were paid as required by the contract.  The present case arises upon a controversy as to the amount of the balance payable by the buyer on delivery of the vessel.

Immediately after the signing of the contract, the New York branch of plaintiff company was retained by the Société Elizabeth to act as its agent in the transaction, with full powers to accept delivery of the vessel, and was informed that the buyer would send a captain, chief engineer, and first officer to fit out the vessel and complete the crew.  In December, 1918, Captain Verwee was sent by the buyer from Belgium, and went to Millville, where the vessel was being built, and remained there in active contact with the building operations until the vessel was completed and delivered.

There was delay in the completion of the vessel owing to inclement weather and an influenza epidemic, but it was finally ready for delivery in May, 1919, and a controversy then arose as to the amount of the final pay-

ment due upon it. This involved questions of demurrage for delay in completing the vessel, extra charges for larger engines installed and various alterations, also advances for ship stores and other items; but the chief difference arose when the parties undertook to ascertain the correct deadweight carrying capacity of the vessel, in order to determine the full contract price of the vessel. This became a subject of inquiry and dispute, conflicting claims were made, and numerous messages concerning it passed between plaintiff, Société Elizabeth, Captain Verweé, and Wilson as president of the Shipbuilding Company.

On June 12, 1919, an agreement was reached without recourse to arbitration, between the seller, represented by Wilson, and the buyer, represented by plaintiff, whereby the sum of $120,000 was to be paid by the buyer in full settlement of all claims, and this sum was finally paid on July 9, 1919, when the vessel was taken over by the buyer. Afterwards, but before the commencement of this suit, the affairs of the American Lumber Company and the Gulf Shipbuilding Company were liquidated, and their assets are yet retained by the Alien Property Custodian.

The plaintiff claims that the payment of $120,000 as aforesaid was procured by the fraud of the seller, acting through Wilson, its president; that the latter falsely and fraudulently represented to plaintiff that the vessel had a deadweight carrying capacity of 2,337 tons, whereas in fact its capacity was only 1,680 tons, as was well known at the time by Wilson and the seller; that plaintiff, as agent for the buyer, relied upon this representation, believing it to be true, and was thereby induced to agree that the Société should make the payment of $120,000; and that afterwards a judgment for $123,033.57 was recovered against plaintiff by the Société Elizabeth in the courts of Belgium, upon a complaint that plaintiff was negligent when acting as agent of the Société in relying upon the representations aforesaid, and in computing the price of the vessel upon said excessive tonnage; and that plaintiff was compelled to pay, and has paid, such judgment, together with costs and expenses. Plaintiff bases its present suit upon the claim that it has been subrogated to the right of the Société to recover because of the overpayment induced by the seller's fraud, and it prays that the amount of the claim be found by the court, and a decree entered requiring the Alien Property Custodian to pay the same out of the corporate assets of the corporations remaining under his control. The low-

er court, after hearing the evidence, dismissed plaintiff's bill of complaint, whereupon this appeal was taken.

In our opinion the appellant's claim must be denied, upon the principles set out by Mr. Justice Field in Slaughter's Administration v. Gerson, 13 Wall. 379, 383 (20 L. Ed. 627), to wit:

"The misrepresentation which will vitiate a contract of sale, and prevent a court of equity from aiding its enforcement, must not only relate to a material matter constituting an inducement to the contract, but it must relate to a matter respecting which the complaining party did not possess at hand the means of knowledge; and it must be a misrepresentation upon which he relied, and by which he was actually misled to his injury. A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by overconfidence in the statements of another. * * * The doctrine, substantially as we have stated it, is laid down in numerous adjudications. Where the means of information are at hand and equally open to both parties, and no concealment is made or attempted, the language of the cases is that the misrepresentation furnishes no ground for a court of equity to refuse to enforce the contract of the parties. The neglect of the purchaser to avail himself, in all such cases, of the means of information, whether attributable to his indolence or credulity, takes from him all just claim for relief."

See, also, Farnsworth v. Duffner, 142 U. S. 43, 12 S. Ct. 164, 35 L. Ed. 931.

It clearly appears that while the vessel was under construction it was always open to inspection and examination by plaintiff or any other representative of the Société Elizabeth, and that during a considerable part of that time the captain who was sent by the Société to equip and command the vessel was in practical control of it. It was accordingly within plaintiff's power at any time to have the deadweight carrying capacity of the ves-

-sel correctly ascertained. Moreover, the contract contained a provision for arbitration in event the parties could not agree upon the subject.· It cannot be said, therefore, that Wilson had better means of learning the facts than plaintiff, and it is apparent from the record that neither Wilson nor the plaintiff was qualified, without the assistance of experts, to calculate the deadweight carrying capacity of the vessel. Under the doctrine set out in the foregoing quotation, these considerations preclude a recovery by plaintiff ·upon any of the several grounds argued by it, and the decree of the lower court must be affirmed.

The decree is affirmed, with costs.