## JENKINS S. S. CO. v. CARGO OF BARLEY.

District Court, E. D. Michigan, S. D.
August 2, 1928.

No. 7389.

Warren, Hill & Hamblen, of Detroit, Mich., and Goulder, White & Garry, of Cleveland, Ohio, for libelant.

Kremer, Branand & Hamer, of Chicago, Ill., for claimants.

TUTTLE, District Judge. This is a libel in rem, filed by the Jenkins Steamship Company, an Ohio corporation, against a cargo of barley, which was carried by the libelant in its barge Alexander Maitland from Ft. William, Ontario, to Port Huron, Mich.; the object of the libel being to enforce against said cargo the maritime lien thereon claimed by the libelant for the payment of the freight alleged by it to be due for carrying such cargo between the aforementioned points in such barge.

The material facts, as disclosed by the record and found by this court, are as follows:

On December 1, 1924, the libelant entered into a charter party with the McLaughlin Grain Company, Limited, of Winnipeg, Manitoba, under which it agreed to carry, in its said barge, the said cargo from Ft. William to Port Huron at a freight rate specified therein. Thereupon this cargo, consisting of about 215,000 bushels of barley, was loaded into the barge by the McLaughlin Grain Company, to which the libelant then issued a bill of lading, dated December 2, 1924, wherein the libelant agreed to transport such cargo from Ft. William to Port Huron and there to deliver it, "subject to freight and charges" specified, in care of the Grand Trunk elevator, for export to the United Kingdom. Thereafter said barge was towed to the port of Port Huron, Mich., where she arrived with said cargo on December 7 and proceeded to and made fast alongside the Grand Trunk elevator at about 3:30 p. m. of that day, and about half an hour later the elevator began unloading the cargo, in accordance with the custom in force at that port, under which a vessel arriving with a cargo for delivery in care of that elevator made such delivery by mooring at the elevator dock, in such a position with respect to its unloading facilities that the grain constituting its cargo could be unloaded into said elevator. Pursuant to the custom of this port, according to which, in such cases, the shipper furnished a suitable place for unloading and attended to such unloading, the persons in charge of this elevator, on behalf of the shipper, commenced to unload this cargo on the afternoon of the day of its arrival at the dock, and continued the work of such unloading, with intervals of suspension of operations at night, until the night of December 8, at which time it had unloaded between one-fourth and one-third of the cargo.

Shortly before 6 o'clock on the morning of the following day, a fire originated in said elevator, which resulted in the total destruction thereof, and which was also communicated to the said barge, with resultant damage to it. During the progress of this fire, and by reason thereof, it was necessary to move the barge from the elevator dock in order to save the cargo, and this was done. There was no other grain elevator in Port

Huron, and the barge was towed a short distance from the dock of the burned elevator to a coal dock, where the fire which had spread to the barge was extinguished before it destroyed or substantially injured the cargo. The following day libelant formally abandoned the barge to the underwriters carrying the insurance thereon as a total loss. The master of said barge remained in charge and control thereof and in the employment of the libelant until January 13, 1925. On the day of the fire and before its abandonment of the barge, libelant requested payment of the freight from the shipper, which request was refused, except as to the portion of the cargo unloaded into the elevator before the fire. Thereupon the libelant notified the shipper of its abandonment of the barge and its intention to file a libel against the cargo for its unpaid freight, and was informed by said shipper that it was abandoning said cargo to the underwriters carrying the insurance thereon. Thereafter the shipper paid to the libelant the freight on the portion of the cargo unloaded before the fire, but no payment of any other freight has been made. Shortly after the fire, the cargo underwriters took charge of said cargo for the benefit of whom it might concern, and on December 13 made a sale thereof to James Richardson & Sons, Limited, of Toronto, Canada, and the Donahue-Stratton Company of Milwaukee, Wis., under a bill of sale reciting the sale of said cargo, "as and where it now lies in the barge Alexander Maitland at Port Huron, Mich.," and reciting further that "it is understood and agreed by the said grantees that said cargo is sold as is and where is, and all expenses in connection with the unloading and taking possession of said cargo, including the expense of moving said vessel from the unloading point to a mooring place within the limits of the harbor of Port Huron, Mich., and also including any imposts or duties that may be levied against the same, shall be borne by the said grantees."

Shortly prior to such sale, representatives of the purchasers just mentioned went aboard the barge, and, without informing the master thereof that they were interested in the freight on the cargo, asked and received from said master permission to examine, and did examine, said cargo. No information was received, and no inquiry was made, on behalf of said purchasers from said master, or of any other representative of the libelant, as to whether the freight on the cargo had been paid, and no information on that subject was received by said purchasers. On December 14 the purchasers caused the barge to be towed, with the consent of its master, to another dock for unloading, and proceeded to there furnish a hopper and clam shell unloading apparatus, with which they unloaded the cargo from the barge into freight cars procured by them, in which the grain was, as unloaded, shipped to the seaboard for export. Until this place and means of unloading were so furnished by said purchasers, none had been supplied or offered by or on behalf of any one representing the shipper or cargo, although the libelant was at all times ready, willing, and able to continue the delivery of the cargo which it had commenced prior to the fire, and which it resumed as soon as it was able to obtain acceptance of such delivery. During all of this time the libelant retained actual possession and control of said barge to the extent necessary and sufficient to make said delivery, and no effort nor claim was made by the vessel underwriters, interrupting or interfering with such delivery by libelant.

On December 15, while the preparations of the purchasers for unloading were in progress, but before the cargo had been unloaded, the libelant filed this libel against the cargo for the unpaid freight, and on the following day said cargo was seized by the United States marshal under said libel. Thereupon said purchasers appeared herein as claimants (no other parties have entered any appearance or taken any proceedings herein), and promptly thereafter the proper bond was duly filed, and the cargo released thereunder and unloaded by the claimants. Thereafter the barge was sold by said underwriters, and the libelant, at their request, executed and delivered to the purchaser of said barge a bill of sale thereof. No claim to the unpaid freight involved here has been made herein by said underwriters or the last-mentioned purchaser. The libelant alleges that said freight was earned by, and is due and payable to, it, and that it is entitled to enforce a maritime lien therefor against said cargo. The claimants dispute and deny the right of the libelant to any recovery herein, on several grounds.

1. It is urged by the claimants that the libelant has not earned the freight in question, because it failed to make delivery of the cargo prior to the time when it abandoned the barge to its underwriters, and that as such delivery was not made until after such abandonment this freight was not earned by the libelant, but by said underwriters. Assuming, without deciding, that this objection may be made by the claimants, instead of by the underwriters mentioned, and that, in the ab-

sence of any intervention or claim by said underwriters, the question as to the proper distribution of said freight, as between the libelant and the underwriters, is a question in which the claimants have a legal interest, I am satisfied, and hold, that the libelant made a sufficient delivery of the entire cargo, and thereby earned all of the freight in dispute, before it abandoned its barge to the underwriters. As this court has already held, the owner of a cargo, in the absence, as here, of an agreement to the contrary, is bound to furnish to the vessel a place for unloading, and to cause such cargo to be unloaded promptly after notice of arrival of such vessel, in accordance with the custom of the port where such unloading takes place. The James H. Hoyt (D. C.) 299 F. 666.

It is clear from the record in the present case that, when the Alexander Maitland was moored alongside the dock of the Grand Trunk elevator (the agreed destination and the place for delivery thereof furnished by the cargo interests), in a position, and with facilities, by which its cargo could be readily unloaded into said elevator, it made a proper tender of delivery of the cargo, in accordance with the custom of that port, provided, of course, that it kept such tender good. Through no fault of the libelant, acceptance of its delivery was interrupted by the destruction of the place furnished by the shipper for such delivery. It then became the duty of the cargo interests to furnish some other place for delivery. Until then, the libelant, although continuing able and willing to resume the delivery thus interrupted, was compelled to wait. In the meantime, the libelant was obliged to, and did, exercise reasonable care in storing the cargo on board of its barge, which became for that purpose the equivalent of a warehouse. As soon as a substituted place for delivery had been furnished to it, the libelant resumed and completed the delivery which it had previously commenced.

Under the circumstances, there is no merit in the contention that the libelant did not make a proper and sufficient delivery of the entire cargo, so as to become entitled to the entire freight thereon. This right was not affected by the abandonment of the vessel after its arrival at the agreed place of destination and its tender of delivery. It is settled law that freight already earned at the time of the disaster, on account of which an abandonment of a vessel to its underwriters is made, goes to the owner of the ship. Mason v. Marine Insurance Co., 110 F. 452, 54 L. R. A. 700 (C. C. A. 6). Even if, however,

this freight could be properly said to have been pending and unearned at the time of this abandonment, it would be distributable between the libelant and the underwriters pro rata itineris (Mason v. Marine Insurance Co., supra), and, as the voyage of this vessel had been completed by arrival at its port of destination prior to its abandonment, the result here would be the same. I reach the conclusion that the libelant made a proper, sufficient delivery of all of its cargo, and thereby earned the right to payment of the entire freight due for the carriage and delivery of such cargo, and the contention of the claimants to the contrary must be overruled.

2. The objection of the claimants to the effect that, at best, the libel was prematurely filed, because filed before all of the cargo had been actually unloaded from the vessel, cannot be sustained, both for the reason that the conclusion just reached as to what constitutes proper delivery disposes of the claim that actual unloading is necessary to such a delivery, and for the further reason that, if it should be assumed that the completion of such unloading was a condition precedent to the right to file this libel, it is settled that the mere fact that a libel has been prematurely filed is not fatal to the enforcement thereof if the libelant becomes otherwise entitled thereto before the hearing thereon. Clark v. Cargo of Lumber, 65 F. 236 (C. C. A. 7); Munson Steamship Line v. Glasgow Navigation Co., 235 F. 64 (C. C. A. 2).

3. It is further urged by the claimants that, at the time of the filing of this libel, the libelant had lost possession of the cargo against which such libel was filed, and that thereby the libelant had waived and lost any maritime lien which it otherwise might have asserted against such cargo. I am, however, satisfied by the record that the libelant was in possession, both actual and constructive, at the time of the filing of its libel. It appears from the evidence that, immediately on receipt of information from the master of the barge concerning the fire already mentioned, the libelant instructed said master to remain on the barge, subject to the orders of libelant, and to prevent any loss of possession of the cargo without payment of the freight or filing of a bond for release of the libel which the libelant intended to file against the cargo to enforce payment of such freight. These instructions were followed, and the master employed by the libelant remained in actual physical possession and control of the barge and the cargo on board thereof until after the filing of the libel. There is nothing

in the record to indicate that the libelant intended to waive its right to retain such possession and custody of this cargo as might be necessary to enable it to assert and enforce the maritime lien thereon (for payment of its freight) to which it was entitled under familiar principles of admiralty law. Although it is true that an unqualified, unconditional delivery of a cargo may constitute a waiver of the right to a maritime lien thereon for unpaid freight, yet even the act of unloading such cargo, if accompanied by circumstances indicating an intention to preserve such lien, does not constitute such waiver. The Giulio (D. C.) 34 F. 909; Howard v. Cargo of Malt (D. C.) 255 F. 917. The contention of the libelant in this connection must be sustained, and that of the claimants overruled.

4. Finally, it is contended by the claimants that the libelant is now estopped from claiming a lien on the cargo for freight by reason of the fact that, when the representatives of the claimants boarded the barge after the fire for the purpose of examining the cargo with a view to its purchase, the master of said barge, representing the libelant, failed to inform them that such freight had not been paid, and that said lien was claimed against said cargo for the payment of such freight, and the claimants invoke the familiar equitable doctrine of estoppel, based upon the principle that he who remains silent when he should speak must remain silent when he would speak. There is, however, nothing in the facts and circumstances disclosed by the present record to indicate that there was any duty on the part of the master of this barge, or of any other representative of the libelant, to inform the claimants concerning the payment or nonpayment of this freight. No inquiry nor other statement relative to that subject was made to the libelant or any of its agents by the claimants or any of their agents, and it does not appear that the former supposed, or had any reason to suppose, that the latter were relying upon any belief that no claim for such freight would be made, or were without knowledge that such freight had not been paid. Indeed, the absence of any such reliance or belief on the part of the claimants is strongly suggested, if not conclusively shown, by the facts that they agreed to take delivery of this cargo in the barge (and therefore had no reason to assume that the freight had been paid), and that in the hereinbefore quoted bill of sale by which they bought said cargo it was clearly provided that such cargo was sold to them "as is and where is," and that "all expenses in connection with the unloading and taking possession of said cargo" should be borne by them. Reliance upon, and prejudice from, silence are essential elements of any claim of estoppel based upon such silence, and those elements are wholly lacking here. Nor does there appear any basis for the claim that there was any duty to volunteer to the claimants information which was not asked, and which there was no fiduciary obligation to disclose. Fellows v. National Can Co., 257 F. 970 (C. C. A. 6); Canadian National Railway Co. v. George M. Jones Co., 27 F.(2d) 240 (C. C. A. 6, June 30, 1928). The contention of claimants, based upon the doctrine of estoppel, is clearly untenable and cannot be sustained.

The entire record and the voluminous and exhaustive briefs of counsel have been carefully examined and considered, and the court is fully satisfied and convinced that the libelant is entitled to a decree awarding it the lien claimed for the amount due and payable to it for the freight involved herein, such amount to be either agreed on between the parties and recited in said decree, or to be determined in further proceedings in this cause as provided in said decree. The parties may proceed to settle a decree accordingly, pursuant to the applicable practice.