94 F.2d 339 (1938)
THE MARSODAK.
ROBINS DRY DOCK & REPAIR CO.
v.
MARSODAK S. S. CO.
No. 4214.
Circuit Court of Appeals, Fourth Circuit.
January 13, 1938.
*340 John W. Oast, Jr., of Norfolk, Va. (Crowell & Rouse, and E. Curtis Rouse, all of New York City, on the brief), for appellant.
J. Harry LaBrum, of Philadelphia, Pa., and Leon T. Seawell, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., James S. Benn, Jr., and Conlen, LaBrum & Beechwood, all of Philadelphia, Pa., on the brief), for appellee.
Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.
NORTHCOTT, Circuit Judge.
This is a libel in admiralty filed in the District Court of the United States for the Eastern District of Virginia, at Norfolk, in February, 1936, by Robins Dry Dock & Repair Company, a New York corporation, hereinafter referred to as the libelant, against the steamship Marsodak. The object of the libel was to assert a lien against the steamship for the sum of $5,153.42, for material furnished and work done on her at the order of the owner or its agents.
The Marsodak Steamship Company, a corporation, hereinafter referred to as the respondent, filed an answer denying that the libelant had any valid claim against the vessel. After the taking of testimony, all by deposition, a hearing was had in October, 1936, and on February 18, 1937, the court below handed down an opinion holding for the respondent, and on March 15, 1937, a decree was entered dismissing the libel with costs to the respondent. From the decree so entered the libelant has appealed.
The Marsodak, at the time the work sued for was done, was owned by the Charles Nelson Company and was operated by a subsidiary of that company, the Nelson Steamship Company, in whose possession the vessel was each time the work was done.
Both of these companies had their principal offices in San Francisco, Cal., and a branch office for the transaction of all Atlantic coast business in the city of New York in charge of Frederick W. S. Locke, who was Eastern manager of the Charles Nelson Company, and executive vice-president of the Nelson Steamship Company, in charge of repairs. At Seattle, the companies operated through L. B. Fitch.
The work for which claim was made by libelant was done as follows:
At plant of libelant, Robins Dry Dock & Repair Company, in Brooklyn, N. Y., on October 6, 1935, in the amount of $650.12; at plant of Todd Seattle Dry Docks, Inc., in Seattle, November 21, 1935, in the amount of $734, assigned to libelant, February 21, 1936; at plant of Tietjen & Lang Dry Dock Company, in Hoboken, N. J., on March 8, 1935, in the sum of $1,124.80, assigned to libelant, February 21, 1936; at plant of Tietjen & Lang Dry Dock Company, in Hoboken, on January 14-16, 1936, in the sum of $2,644.50, assigned to libelant, February 21, 1936.
All of the work done at Erie Basin, N. Y., and Hoboken, N. J., was ordered by the vessel owners through Locke, while the Seattle work was similarly ordered through Fitch.
While the vessel was in dry dock at Hoboken, between January 13 and 16, 1936, one John C. Rogers inspected her with a view to purchase. Rogers was accompanied by a marine surveyor, one Johansen. On January 17, 1936, Rogers, having organized the Marsodak Steamship Company, of which he was president, entered into an agreement as trustee to purchase the vessel, the agreement was executed by a bill of sale from the Charles Nelson Company to the Marsodak Steamship Company, dated January 18, 1936, and recorded at Wilmington, Del., on *341 January 22, 1936. The price paid for the vessel was $55,000, part cash and the balance in twelve equal installments, represented by promissory notes secured by a mortgage. The agreement of sale also included an option to Rogers to purchase two other steamships, the Plow City and the Suweid. This agreement also provided that the buyer should pay the cost of having the Marsodak dry docked for examination prior to the time of delivery.
Robins Dry Dock & Repair Company had, previous to 1936, performed work on other vessels owned by the Nelson Company. On or about October 5, 1935, it received a promissory note of the Nelson Company, in the sum of $17,806.30, payable January 9, 1936, for this work. In agreeing to accept this note the libelant wrote the Charles Nelson Company that in accepting the note it did not waive the maritime liens on the vessels on which the work was done. On January 9, 1936, the Nelson Company paid $2,806.30 on the principal of this note without direction as to any specific bills as to which the payment should be applied. The payment was applied by the libelant on the note generally, by indorsement.
On January 29, 1936, at the request of Locke, the New York agent of the Nelson Company, the Tietjen & Lang Dry Dock Company rendered a separate bill for the dry docking of the Marsodak at the time Rogers examined her, and on the receipt, through the Nelson Company, of Rogers' check ($823.50) for this bill, the treasurer of libelant, one Cox, wrote Rogers acknowledging receipt of the check "in settlement of our bill against S. S. `Marsodak.'" This, however, occurred after the purchase of the vessel by Rogers.
There had been recorded in the custom house at San Francisco, Cal., among other mortgages, a mortgage upon the Marsodak dated December 6, 1932, given by the Charles Nelson Company to secure a debt due John Rosenfeld's Sons, a California corporation. This mortgage was satisfied on the records and discharged, as to the Marsodak, on January 18, 1936.
After the sale of the Marsodak the Charles Nelson Company on February 5, 1936, filed a petition, in San Francisco, for reorganization under section 77B of the Bankruptcy Act, as amended, 11 U.S.C.A. § 207, and the Nelson Steamship Company did likewise on February 7, 1936. On February 19, 1936, the libelant, in its proof of claim filed in these proceedings, asserted its maritime lien against the Marsodak as did also Tietjen & Lang and the Todd Seattle Dry Docks.
Subsequently, during May, 1936, respondent, not having paid all of the purchase price of the Marsodak, made a contract with the bankruptcy trustee, of the Nelson Steamship Company, as party of the first part, and John Rosenfeld's Sons, as party of the second part, modifying its previous purchase contract dated January 17, 1936, as to its deferred payments and as to the purchase of two other boats (S. S. Plow City and S. S. Suweid), and provided therein for full indemnity from the estate of the Nelson Steamship Company against any loss or damage, including expenses and counsel fees on account of the maritime liens asserted by the libelant herein. In this agreement John Rosenfeld's Sons, which held them, agreed to deliver to the trustee certain of the notes given for the purchase of the vessel by the Marsodak Steamship Company and received in exchange part of the proceeds of the sale of the vessels, the Plow City and the Suweid.
Two questions are presented for our consideration on the appeal. First, Did the libelant have a valid maritime lien on the Marsodak? Second, If the libelant had such a lien was the lien waived or is libelant estopped, by the conduct of its officers, or the officers of its assignors, from asserting the lien?
In view of the fact that all of the evidence was by deposition, and the judge below had no opportunity to see the witnesses or hear their testimony, his findings do not have the weight they would have, had he had that opportunity. The Santa Rita, 9 Cir., 176 F. 890, 30 L.R.A.,N.S., 1210; The Coastwise, 2 Cir., 68 F.2d 720. This situation has necessitated a thorough study of the evidence. Such a study has led us to the conclusion that the first question must be answered in the affirmative. It is claimed on behalf of the respondent that the testimony of Cox, the treasurer of the libelant, as well as treasurer of the other two companies that did work on the vessel, was to the effect that credit was extended to the owner, and not to the vessel, when the work was done. We do not think that it is a fair inference, from this testimony, that credit was extended to the owner solely with no thought of or reliance on the maritime lien given by statute. Maritime Lien Act, title 46 U.S.C.A. § 971. Credit could be given to the owner without that fact alone *342 constituting a waiver of the lien (Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U.S. 1, 10, 41 S. Ct. 1, 65 L.Ed. 97) and we think that a fair analysis of this testimony is, that Cox testified that credit was given to the owner without in any way waiving the lien. The printed stationery of the shipyards stated that a lien would be claimed for all work done, and the bids under which the work was done had this provision printed on them in red ink. In the letter accepting the note for the account due, from the owner of the Marsodak and other vessels, it was expressly stipulated that the taking of the note was to be regarded in no sense a waiver of liens. This letter was written on October 16, 1935, before two of the claims for work done on the vessel had been created, the work for which a claim of $2,644.50 was asserted not being performed until January, 1936. The owner undoubtedly knew that the work was not being done solely on the credit of the owner. It is not logical to presume from these facts that either libelant or its assignors, voluntarily and without any consideration whatever, waived a lien which was their security. In addition to this, the Maritime Lien Act provides that "it shall not be necessary to allege or prove that credit was given to the vessel." We are of the opinion that the libelant had a valid maritime lien on the Marsodak.
We have also reached the conclusion that the second question must be answered in the negative. We can find, in the record, nothing that would establish a waiver of the liens or justify the application of the doctrine of laches to defeat them. Nor do we think that any of the shipyards involved were, by the acts of their officers or agents, estopped from asserting their respective liens.
Certainly there was no waiver of the liens or any of them to be inferred from the acceptance of the note for $17,806.30. The letter agreeing to accept the note expressly stated that the liens were not waived. Nor could the acceptance of the note under these circumstances act as an estoppel. The Tietjen & Lang Dry Dock Company's letter of January 31, 1936, could not be held to constitute a waiver. The letter was written by Cox, treasurer of the dry dock company, acknowledging the receipt from Rogers of his check, received through the Nelson Company, and while the words used were "in settlement of our bill against S. S. `Marsodak'" the circumstances plainly show that the statement meant, in settlement of the dry dock company's bill against Rogers for work on the Marsodak. The account had been separated into two parts by direction of the owners' agent and a bill was sent to Rogers for only that part of the account he (Rogers) had agreed to pay. Rogers had seen the vessel on the dry dock and saw other work being done on her in addition to the work for which he was paying and must have known that his remittance did not settle the entire bill of the dry dock company, for work done at that time on the Marsodak. Furthermore the separate bill was rendered to Rogers and the letter written subsequent to the closing of the purchase of the vessel by Rogers and could in no way have influenced him in the transaction.
There was no such negligence or delay on the part of the shipyards in seeking to enforce their liens as would constitute laches. The oldest of the claims was for work done within a year before the filing of the libel and the larger claims were for work done much later than that. We do not think the judge below was justified in concluding, as he did in his opinion, that the filing of the libel and the attempt to assert the liens was an afterthought brought about by the proceedings under section 77B of the Bankruptcy Act, by the owner of the vessel. It is not at all unusual, but on the contrary it is customary, for creditors to proceed against any security they may have for their debt only after the principal has been proven insolvent. There was nothing unusual in the fact that the shipyards sought to hold the vessel only after they found the owner could not pay their claims.
It is strongly contended on behalf of the respondent that when Rogers inspected the Marsodak, on the dry dock, the officers of the dry dock company knew he contemplated purchasing the vessel and they should have voluntarily informed him of their liens and not having done so they were estopped from asserting any liens for the work done. We do not think this contention is sound. The dry dock company owed no duty to Rogers and stood in no fiduciary relationship to him. The work was being done for their customer, the owner of the vessel, and it would be very unusual for them to have said to Rogers, "we have a lien on this ship, better look out." What would the owners have thought of such an act? Rogers saw work being done on the vessel and is it not reasonable *343 to presume that as an experienced shipowner he would make inquiry and take all necessary steps to protect himself, as purchaser, against liens for that work? In the case of Jenkins Steamship Co. v. Cargo of Barley, D.C., 28 F.2d 135, 139, affirmed Richardson & Sons v. Jenkins Steamship Co., 6 Cir., 44 F.2d 759, certiorari denied 283 U.S. 821, 51 S.Ct. 345, 75 L.Ed. 1436, a similar circumstance was discussed. There the court said: "Reliance upon, and prejudice from, silence are essential elements of any claim of estoppel based upon such silence, and those elements are wholly lacking here. Nor does there appear any basis for the claim that there was any duty to volunteer to the claimants information which was not asked, and which there was no fiduciary obligation to disclose. [Cases cited.] The contention of claimants, based upon the doctrine of estoppel, is clearly untenable and cannot be sustained."
The rule of caveat emptor applies to the sale of a vessel under these circumstances (Job & Co. v. Heidritter Lumber Co., 2 Cir., 255 F. 311, 3 A.L.R. 619), and such a rule "has been found best adapted to the wants of trade." Barnard v. Kellogg, 10 Wall. 383, 388, 19 L.Ed. 987; Sanford & Brooks Co. v. Columbia Dredging Co., 4 Cir., 177 F. 878; Furness, Withy & Co. v. Sutherland, 58 App.D.C. 226, 26 F.2d 1004.
Rogers admittedly made no inquiry as to liens at the shipyard and failed to testify in the suit. This failure on Rogers' part to testify would at least raise the presumption that his testimony would not have been favorable to the contention of the respondent. Runkle v. Burnham, 153 U.S. 216, 14 S.Ct. 837, 38 L.Ed. 694. As was said by the judge below, at the hearing: "Failure to call a witness who is thoroughly familiar with the transactions involved, sometimes leads to the presumption that if called his testimony would not be favorable."
Under these circumstances we do not think that it can be successfully contended that Rogers was an innocent purchaser for value.
Facts that are claimed to show the waiver of a lien or facts depended upon to constitute estoppel must be clearly proven.
The judge below bases his finding that libelant was estopped largely on the presumption that an innocent third party, John Rosenfeld's Sons, would be injured by the upholding of the liens. It is stated in the opinion that "the unpaid balance of the purchase price is due from Rogers' nominee to Rosenfeld, not to either of the Nelson Companies. Thus, if the indemnity were applied against libelant's claims, third persons, not the Nelson Company, would be paying the debt of the Nelson Company and would therefore sustain the loss." In this the court was clearly in error. A study of the agreement of May 21, 1936, between the trustee of the Charles Nelson Company, John Rosenfeld's Sons, and John C. Rogers, trustee of the Marsodak Steamship Company, shows that Rosenfeld delivered to the trustee of the Charles Nelson Company five notes (and a part of a sixth note) given for the purchase of the Marsodak. At least a part of the unpaid balance of the purchase price is due to the trustee in bankruptcy of the Charles Nelson Company. This contract clearly protects Rogers and the Marsodak Steamship Company from any loss through the establishment of the liens and would seem to fully protect John Rosenfeld's Sons from any like loss, although in the view of the case taken by us is not necessary to decide this latter point. As stated in the brief on behalf of libelant, the handling of the various transactions between the Nelson Company, John Rosenfeld's Sons, and the Marsodak Steamship Company is extremely confusing.
The fact that the mortgage, held by John Rosenfeld's Sons, on the Marsodak, was canceled on January 18, 1936, makes anything concerning that mortgage immaterial to the issues decided here and it is not necessary to discuss the point raised on behalf of the libelant that the mortgage was not a valid one.
The partial payment of $2,806.30 made by the Charles Nelson Company on the note it had given libelant can have no effect on the lien claimed. The Nelson Company made no direction as to the application of this payment at the time it was made and, therefore, the libelant had the right to apply it to its own advantage, i. e., to that part of its account for which it had no security.
The libelant had a valid maritime lien on the Marsodak for its claim; there was no waiver of the lien proven; and there were no facts proven that would justify the enforcing of the doctrine of estoppel. The decree of the court below is reversed.
Reversed.